KENNEDY, Justice.
Rebecca and John Lampton filed an action against Allstate Insurance Company (“Allstate”) and Joan Beck, alleging breach of contract and fraud in relation to a series of transactions that occurred after Ms. Lampton was involved in an automobile accident. The trial court entered a summary judgment for both defendants on the Lamptons’ claims. In this appeal the Lamptons contest the summary judgment on the fraud claim but make no arguments concerning the breach of contract claim, so the issue before us is whether the trial court properly entered the summary judgment on the fraud claim.
The standard used to determine the propriety of a summary judgment is found in Rule 56(c), A.R.Civ.P.:
“The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
The burdens placed on the parties by this rule have often been described:
“The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala.1977); Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co., 390 So.2d 601 (Ala.1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980).”
Schoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala.1985).
The plaintiffs must prove their case by substantial evidence, Ala.Code 1975, § 12-21-12. In determining whether there is substantial evidence, we review the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Stephens v. City of Montgomery, 575 So.2d 1095, 1097 (Ala.1991); Sanders v. Kirkland & Co., 510 So.2d 138 (Ala.1987). Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Finally, a trial court’s ruling on a summary judgment motion is a nondiscre- *207 tionary ruling, and no presumption of correctness attaches to that ruling; accordingly, our review of the evidence properly presented in the record is de novo. Hightower & Co. v. United States Fidelity & Guaranty Co., 527 So.2d 698 (Ala.1988).
The plaintiffs present two arguments in relation to fraud. On one hand, they contend that they were fraudulently induced to sign a release of all contractual claims against Allstate and that the release is void, accordingly. On the other hand, they contend that Allstate fraudulently suppressed the fact that they were entitled to uninsured motorist insurance benefits and misrepresented to them that medical benefits were all they were entitled to. Ala. Code 1975, §§ 6-5-102 and -101, respectively. We decide the case by addressing the set of claims made pursuant to §§ 6-5-101 and -102; we do not address the Lamp-tons’ claim that the release is void.
It is undisputed that the Lamptons had two motor vehicle insurance policies with Allstate and that in the circumstances of this case those policies provided coverage of $10,000 in medical benefits and $40,000 in uninsured motorist benefits.
The defendants produced evidence that Ms. Lampton reported to them that she was involved in a one-car accident, and, that because of inconsistencies in her and Mr. Lampton’s description of the accident, they believed that Ms. Lampton may have been faking injuries, as well as the circumstances of the accident itself; that, nevertheless, Allstate negotiated with the Lamp-tons and agreed to pay $852 to Ms. Lamp-ton for “lost wages” in relation to the accident; that Allstate sent the Lamptons an $852 check, which they endorsed and deposited; that in relation to that check, the Lamptons signed a release for any additional contractual claims that they might have had against Allstate; that Joan Beck, Allstate’s insurance adjuster, told the Lamptons that they might be entitled to uninsured motorist benefits. Considering that evidence, we hold that the defendants made a prima facie showing that they were entitled to a summary judgment both on the plaintiffs’ § 6-5-102 claim that Allstate and Ms. Beck fraudulently suppressed or concealed the fact that the plaintiffs were entitled to uninsured motorist benefits and the plaintiffs’ § 6-5-101 claim that the defendants misrepresented that medical benefits were ah the plaintiffs were entitled to.
The Lamptons admit that they signed the release, and Ms. Lampton testified in, deposition that she read it. They do not deny endorsing and depositing the $852 check. Other than that, the Lamptons presented evidence that conflicts with the evidence supporting the defendants’ prima facie case. According to the evidence that the plaintiffs presented, Ms. Lampton had unpaid medical bills related to the accident at the time of the discussions concerning the $852 payment from Allstate and Ms. Beck told them that to receive the $852 for the medical bills, they had to sign the release. In deposition testimony, they deny that Ms. Beck or any representative of Allstate told them of the availability of the uninsured motorist benefits before they signed the release. To the contrary, they testify that Ms. Beck told them that the $852 was the last of their medical payment money; that Allstate had paid them for most of the $10,000 in coverage for medical bills, except for the $852; that Ms. Beck represented that they were entitled to that $852 and nothing more; that Ms. Beck never mentioned uninsured motorist benefits.
Consider the following testimony by Ms. Lampton:
“Q. Well, did Ms. Beck tell you before you signed that release, at any time in your dealings with her, over the phone or in person, did she tell you that there were uninsured motorist benefits that were provided for in your Allstate policy?
“A. No, sir.
“Q. You remember that, don’t you?
“A. She told us we had ten thousand dollars.
“Q. Ten thousand dollars, for medical bills?
“A. Yes, sir.
“Q. Under the medical pay endorsement?
*208 “A. She told us we had ten thousand dollars.
“Q. Period?
“A. Period.
“Q. And not a dime more?
“A. She didn’t mention any more.
[[Image here]]
“Q. Did she [Ms. Beck] explain to you that there were uninsured motorist benefits available?
“A. No, sir.
“Q. Y’all had two cars on the policy, didn’t you?
“A. Yes, sir.
“Q. And did she tell you that you, because you had two cars on the policy, your benefits under uninsured motorist were forty thousand?
“A. No, sir.
“Q. Well, have you ever heard of uninsured motorist benefits?
“A. Just since we have talked.
“Q. Since we have talked. Who are you talking about?
“A. Since my husband talked to Mr. McKnight [the Plaintiffs’ first lawyer].
“Q. That’s the first time you’d heard of that?
“A. Yes, sir.
“Q. So, if Joan Beck says she explained uninsured motorist benefits to you, and said that she told you they were available up to $40,000, is it your testimony that you just don’t remember that, or is it your—
“A. (Interposing) She never told us.
“Q. So if she testified to that, you’re just saying she is lying?
“A. She never told us.”
Mr. Lampton testified as follows:
“Q. Okay. Were you told about the $10,000.00 limit on the medical bills under the policy?
“A. Yes, Ms. Beck.
“Q. Were you explained about uninsured motorist?
“A. No, sir, not that I remember.
“Q. Not that you remember. Could you have been told about it and you just don’t remember?
“A. The thing that I was concerned about was the dollars that were involved and that what I was — remember that stuck out in my mind was that we had $10,000 worth of coverage and that we had used it up and that the conversation that I had last talked with Ms. Beck, that maybe we could get the nuns to help us with the — with the rest of the money — with the rest of the bills we had.
“Q. Were you told that you had $40,000 of benefits under the uninsured motorist endorsement?
“A. No, sir, I wouldn’t have worried about it then if I’d have known that I would have had the other bills paid.
[[Image here]]
“Q. Are you telling us that Joan Beck never told you, nor did anybody at Allstate, ever tell you that you had an uninsured motorist endorsement up to forty thousand dollars for this accident?
“A. That is correct.”
Considering the entire record, we hold that the Lamptons produced substantial evidence in support of their claims under §§ 6-5-101 and -102 that we have described and that that evidence, when considered in light of the evidence supporting the defendants’ prima facie case, indicates that there exist genuine issues of material fact, suitable for jury determination, on both claims.
Much discussion in the parties’ briefs is devoted to whether the Lamptons should have returned the $852 as a prerequisite to maintaining their fraud claims. No doubt, in cases where a party seeks to have a release declared void on the grounds that he or she was fraudulently induced to enter it, “generally, [that] party must return the consideration given for a release as a condition precedent to challenging the release as having been fraudulently obtained.” Taylor v. Dorough, 547 So.2d 536 (Ala.1989). However, “the longstanding rule in Alabama is that a defrauded relea-sor may affirm the release and sue for damages for the fraud without returning or tendering the consideration for the re *209 lease.” Coastal Concrete Co. v. Patterson, 503 So.2d 824 (Ala.1987). The plaintiffs’ claims under §§ 6-5-101 and -102 that we have discussed in this opinion fall under the rule described in Coastal Concrete and are factually distinguishable from the claims described in Taylor.
The trial court’s summary judgment on the plaintiffs’ claims under §§ 6-5-101 and -102 was error. Accordingly, the judgment is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.