On Application for Rehearing
The opinion of September 22, 1995, is withdrawn and the following opinion is substituted therefor.
This is a fraud case involving the sale of an automobile. We granted certiorari review to determine whether the Court of Civil Appeals erred in assessing the standard of proof required to charge the jury on a punitive damages claim. We affirm.
Rosa Iliff and her husband George Iliff sued Norwood Hodges Motor Company ("Hodges"), seeking damages for fraud, deceit, and misrepresentation. They alleged that on August 10, 1988, they had negotiated with Hodges to buy a sapphire blue 1988 Mazda 626 automobile. The Iliffs alleged that Hodges did not disclose to them that the sapphire blue Mazda 626 Rosa Iliff ultimately purchased on August 25, 1988, was not the same vehicle as to which she and her husband had negotiated 15 days earlier. The trial court dismissed George Iliff's claim against Hodges after the Iliffs had presented their case-in-chief, stating that Mr. Iliff lacked standing because Rosa alone had actually obtained the financing for the purchase of the car. She asserts that Hodges represented to her that the car she purchased was the same car the Iliffs had seen on August 10. She claims there were fewer options on the second car, but that Hodges charged her the price she had agreed to pay for the first car.
At trial, George Iliff testified that his friend Dale McCullars, who was the finance manager at Hodges, had told him about the car and had invited him to come to the dealership to see it. He said that on August 10 he and his wife tested a blue Mazda. He said that automobile was equipped with dealer-installed air conditioning (which he said Hodges salesman Mike Robertson represented as preferable to a system installed at the port of entry), a vinyl headliner, pinstriping, sporty hubcaps, and a factory-installed option on the dashboard that was later identified as a suspension-control device. Mr. Iliff said the car's odometer had approximately 28 miles on it.
Rosa Iliff obtained the financing to purchase the car. She testified that the loan process took about two weeks; she said that after when she received the check for the loan proceeds, she telephoned Hodges, on August 25, and asked whether it still had the car she had tested on August 10 and that salesman Robertson responded affirmatively. She said that in fact Hodges that date had a new Mazda, but that it was not the same car *Page 247 
she and her husband had seen on August 10. She said that it was equipped differently. Specifically, she said that its air conditioning unit had been installed at the port of entry; that it had a cloth headliner; that it had no pinstriping, sporty hubcaps, or factory installed option on the dashboard; and that it had 134 miles on its odometer.
When the Iliffs arrived to pick up the car that evening, they did not notice that the car they were picking up was not the same one they had seen on August 10. They testified that the salesman, Robertson, was in a hurry to attend his son's baseball game. They said Robertson had prepared all the paperwork for the sale and quickly moved them through the signing process. By the time the Iliffs arrived at their home, they said, they had recognized some differences.
George Iliff testified that he telephoned Hodges the next day to inquire about the differences and that, initially, Robertson insisted that the car the Iliffs had driven home was the same car they had tested on August 10. Dale McCullars later told them that the car was not the same one.
The Iliffs also introduced documentary evidence to prove that the first car had cost Hodges more than the second car and that the dates on some of the documents had been changed after Rosa Iliff had signed them.
The testimony from employees of Hodges painted a different picture. Mike Robertson testified that he told Mrs. Iliff when she telephoned on August 25 that the first car they had seen was no longer on the lot but that there was an identical car there for sale.
Al Naragon's testimony rebutted Mrs. Iliff's contention that the two cars were equipped differently. Naragon explained that an air conditioning unit installed at the port of entry was not different from one installed at the dealership, because both were Mazda factory units. Naragon further explained that the factory-installed suspension-control button was available only on the "luxury sports edition" of the car and that neither the car Mrs. Iliff had tested nor the one she purchased was a luxury sports edition model. Naragon also testified that all the headliners in the Mazda 626 were cloth and that the 626 models all came with only one type of hubcap.
Franklin Stephens purchased the original car the Iliffs had tested. He testified that his car had a cloth headliner and plastic hubcaps, no pinstriping, and no factory-installed suspension option. Stephens also testified that he went back to the dealership after he had purchased the car and spoke to a couple who told him that they had negotiated to buy his car but that because Hodges had another just like it on the lot, they were going to purchase the other vehicle. Hodges's finance manager Dale McCullars testified that he saw the Iliffs talking with Stephens and comparing the two cars.
At the close of all of the evidence, the trial court granted Hodges's motion for a directed verdict regarding punitive damages, holding that the evidence of intentional fraud did not meet the "clear and convincing" standard set out in §6-11-20(a), Ala. Code 1975. The jury was not charged on punitive damages; it returned a verdict for Iliff and awarded her nominal damages of $1.00.
The Court of Civil Appeals reversed. In its opinion, it wrote:
 "The trial court gave jury charges for willful misrepresentation, reckless misrepresentation, mistaken or innocent misrepresentation, and suppression of the truth. The record does not reveal upon which theory the jury found for the wife; however, since Hodges claimed to have informed the Iliffs that the car they purchased was not the one they selected earlier, it appears likely that the jury's verdict was based upon a theory of either willful misrepresentation or suppression of truth.
 "An award of nominal damages will support an award for punitive damages. First Bank of Boaz v. Fielder, 590 So.2d 893 (Ala. 1991). Based on the foregoing, we find that the trial court erred in granting Hodges's motion for a directed verdict with regard to punitive damages."
680 So.2d 243, 245.
Hodges contends that the Court of Civil Appeals erred in reversing, because, Hodges says, the trial court correctly applied the "clear and convincing" standard of § 6-11-20(a). *Page 248 
The issue is best articulated thusly: when determining whether to submit an issue of punitive damages to the jury, does the trial court base its decision on whether the plaintiff has presented substantial evidence creating a disputed issue of fact, from which a jury can decide if the plaintiff has proven, by clear and convincing evidence, that the defendant consciously or deliberately engaged in fraud, or does it base its decision on whether the plaintiff presented clear and convincing evidence that the defendant so acted?
Our decision in Hines v. Riverside Chevrolet-Olds, Inc.,655 So.2d 909 (Ala. 1994), is dispositive of this case. There we held:
 "[T]he question whether there is clear and convincing evidence of wrongful conduct that will support an award of punitive damages does not arise until the trial, when a defendant objects to the submission to the jury of the question of punitive damages on the ground that clear and convincing evidence of the requisite wrongful conduct has not been presented."
In Hines, the Hineses sought compensatory and punitive damages, alleging fraudulent misrepresentation and intentional suppression regarding the sale of a car. The trial court entered a summary judgment for the dealer, Riverside, because it determined that the Hineses had not proven misrepresentation and suppression by clear and convincing evidence. In reaching our holding, we first interpreted § 12-21-12 and § 6-11-20, Ala. Code 1975. Section 12-21-12(a) and (c) state:
 "(a) In all civil actions brought in any court of the state of Alabama, proof by substantial evidence shall be required to submit an issue of fact to the trier of the facts. Proof by substantial evidence shall be required for purposes of testing the sufficiency of the evidence to support an issue of fact in rulings by the court, including without limitation, motions for summary judgment, motions for directed verdict, motions for judgment notwithstanding the verdict, and other such motions or pleadings respecting the sufficiency of evidence."
 "(c) With respect to any issue of fact for which a higher standard of proof is required, whether by statute, or by rule or decision of the courts of the state, substantial evidence shall not be sufficient to carry the burden of proof, and such higher standard of proof shall be required with respect to such issue of fact."
Section 6-11-20 states, in pertinent part:
 "(a) Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. . . .
 "(b) As used in this article, the following definitions shall apply:
 "(1) Fraud. An intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury.
 "(2) Malice. The intentional doing of a wrongful act without just cause or excuse, either:
 "a. With an intent to injure the person or property of another person or entity, or
 "b. Under such circumstances that the law will imply an evil intent.
 "(3) Wantonness. Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others.
 "(4) Clear and convincing evidence. Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level *Page 249 
of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.
 "(5) Oppression. Subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights."
(Emphasis added.)
"Gross" is defined in Black's Law Dictionary 702 (6th ed. 1990) as "not to be excused," "flagrant," "shameful."
Justice Almon, writing for the court in Hines, stated the following in construing the two statutes quoted above:
 "Section 12-21-12(a) establishes the quantum of evidence necessary to submit an issue of fact to the trier of fact, when the sufficiency of the evidence to support an issue of fact is tested. Unless a higher standard is provided by statute, rule, or decision, substantial evidence is required to submit an issue of fact to the trier of fact. § 12-21-12(c). This statute limits the authority of a trial court to submit an issue of fact to the trier of fact.
 "Section 6-11-20(a), however, limits the authority of the trier of fact to award punitive damages — that is, a trier of fact may not award punitive damages unless the plaintiff proved by 'clear and convincing' evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. Thus, by its very language, § 6-11-20
does not define the standard for determining whether a genuine issue of fact, material to a claim alleged by the plaintiff, exists for the trial court to submit to the trier of fact; rather, it defines the standard of proof for determining whether the trier of fact has, or had, the authority to award punitive damages."
655 So.2d at 925 (emphasis omitted).
Thus, in this case, the trial court should have determined whether the evidence warranted submitting the issue of punitive damages to the jury, i.e., whether there was evidence of such quality and weight that a jury of reasonable and fair-minded persons could find by clear and convincing evidence that the defendant consciously or deliberately engaged in fraud; then the court should have instructed the jury that, to award punitive damages, it must find that Rosa Iliff had proven by clear and convincing evidence that Hodges consciously or deliberately defrauded her.
In addition to the foregoing, the jury could have found from the evidence that Hodges backdated at least some of the documents relating to the second car — the odometer statement, the invoice, and the application for certificate of title — giving them the date of August 10, when the Iliffs looked at the first car, rather than August 25, when Mrs. Iliff purchased the second car. Hodges acquired the second car from another dealership on August 22 or 23. This could support a finding of intentional fraud when considered with the Iliffs' evidence that Mrs. Iliff was told on August 25 that she was buying the car the Iliffs had seen on the 10th.
Further, there was evidence from which the jury could have found that Franklin Stephens bought the first car on August 22 or 23, but that neither of the Iliffs was at Hodges's place of business on either of those days. The Iliffs presented evidence that they did not go to Hodges's place of business between August 10 and August 25, and Stephens testified that he was not there after the 23d. Thus, the couple who Stephens says he saw may not have been the Iliffs. Stephens did not testify at trial, but only by deposition, because by the trial date he had moved to another state; thus, he was not present at trial to identify the Iliffs as the couple he had seen.
By comparison of the invoices, the Iliffs presented evidence that the first car cost Hodges $700 more than the second one, but Mrs. Iliff paid Hodges the same amount for the second car as the Iliffs had been quoted for the first one. The circuit judge, in directing a verdict against the claim for punitive damages, said: "I just don't think there is any evidence of intent to injure or clear and convincing evidence of that." The Iliffs' attorney responded by arguing that the "intent to injure" language comes from the definition of malice; see §6-11-20(b)(2). The Iliffs did not allege malice, but only fraud. The § 6-11-20(b)(1) definition of "fraud" requires *Page 250 
"the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury." (Emphasis added.) A jury could find that Hodges switched the cars and concealed the switch with the intent of depriving Mrs. Iliff of the benefit of any lower purchase price they might have negotiated because of the $700 lower price Hodges had paid for the second car.
After reviewing the evidence presented at the trial, we conclude that there was sufficient evidence to support a finding, by clear and convincing evidence, that Hodges consciously and deliberately defrauded Rosa Iliff in the sale of the Mazda 626 and that the jury could have believed the fraud was malicious, oppressive, or gross. Thus, the trial court should have allowed the jury to consider the punitive damages claim.
The judgment of the Court of Civil Appeals is affirmed.
OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
HOOPER, C.J., and SHORES, KENNEDY, INGRAM, and BUTTS, JJ., concur.
HOUSTON, J., concurs in the result.
MADD0X, J., dissents.