On September 23, 1994, Lisa M. Pitts filed a complaint in the Montgomery County Circuit Court against Robert H. Boody, an uninsured motorist; Illinois National Insurance Company, Pitts's automobile insurance carrier; and the Elmer Tallant Agency, the agent that had sold Pitts the automobile insurance policy. Pitts asserted claims of negligence against Boody; bad faith refusal to pay against the Elmer Tallant Agency and Illinois National; and fraudulent misrepresentation, intentional misrepresentation, and fraudulent suppression against Illinois National. Pitts's claims arose out of a September 26, 1992, automobile accident in which Boody's automobile collided with Pitts's automobile. Pitts alleged that she had suffered physical injury and had incurred medical expenses, damage to her automobile, and lost wages. Pitts also alleged that she had made a claim under her automobile insurance policy on September 29, 1992, and that Illinois National and the Elmer Tallant Agency had intentionally refused to pay her claim. On October 20, 1994, Illinois National answered, asserting the affirmative defenses of accord and satisfaction, contributory negligence, and the statute of limitations. On October 25, 1994, Illinois National amended its answer to also assert the affirmative defense of payment.
On September 5, 1995, the Elmer Tallant Agency filed a motion for a summary judgment, along with a statement of the undisputed facts and supporting documents. On October 31, 1995, the trial court entered a summary judgment for the Elmer Tallant Agency. On February 12, 1996, Illinois National *Page 834 
filed a motion for a summary judgment on the ground of accord and satisfaction, along with a statement of the undisputed facts and supporting documents; Illinois National filed a memorandum brief on February 20, 1996. Pitts filed a response in opposition to Illinois National's motion, filing supporting affidavits and documents with the response. On March 6, 1996, the trial court entered a summary judgment for Illinois National. Thereafter, the summary judgment entered in Illinois National's favor was made a final judgment, pursuant to Rule 54(b), Ala.R.Civ.P.
Pitts appealed to the Alabama Supreme Court. That court, pursuant to § 12-2-7, Ala. Code 1975, transferred the appeal to this court. Pitts raises one issue: whether the trial court erred in entering the summary judgment on her fraudulent misrepresentation and fraudulent suppression claims against Illinois National. The record on appeal contains only the basic pleadings, the summary judgment filings, and portions of Pitts's deposition testimony and the exhibits attached thereto. A summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P. The burden is on the movant to show that there exists no genuine issue of material fact; however, once a party moving for a summary judgment makes a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmovant to rebut the prima facie showing.McClendon v. Mountain Top Indoor Flea Market Inc.,601 So.2d 957 (Ala. 1992).
 Facts
Pitts alleged that she had suffered neck and back injuries on September 26, 1992, when her automobile was struck by Boody's automobile. Pitts made a claim under the automobile insurance policy issued to her by Illinois National. Illinois National issued Pitts a check on October 7, 1992, for the damage to her automobile.
Between March 29, 1993, and June 7, 1993, an Illinois National claims adjuster sent several letters to Pitts, requesting that she sign and return a medical authorization form. In a letter dated April 6, 1993, the claims adjuster specifically requested the return of a signed medical authorization form so that she could "properly evaluate [Pitts's] medical claim." On June 29, 1993, the claims adjuster sent a letter to Pitts, stating:
 "Enclosed please find a draft in the amount of $100. This represents full and final settlement for bodily injury sustained as a result of the above referenced accident.
 "Please sign the enclosed form(s), have it notarized and return it to me as soon as possible. Thank you for your prompt response."
A handwritten note at the bottom of the letter stated that Pitts still had $1,000 in medical payment benefits available for any doctor for "related and reasonable medical expenses." Accompanying the letter was a check, dated June 30, 1993, made payable to Pitts in the amount of $100, and an "Uninsured Motorist Coverage Release And Trust Agreement." The front of the check contained the following language: "full final payment uninsured [p]ersonal injury claim." Pitts cashed the June 30, 1993, check on July 7, 1993; however, she did not sign and return the release agreement.
Pitts testified by deposition that the claims adjuster told her that the June 30, 1993, check "would keep my case open so if and when I did go to the doctor, I would get payment." Pitts also testified that the claims adjuster did not discuss medical payment benefits with her and that the June 29, 1993, letter that she had received did not have a handwritten note at the bottom. The handwritten note at the bottom of the June 29, 1993, letter is prefaced with two asterisks and at the top of the letter are two asterisks followed by "2nd Request 10-8-93."
 I.Fraudulent Suppression
"The elements of a claim of fraudulent suppression of material fact are: (1) the suppression of a material fact (2) that the defendant was under a duty to communicate (3) *Page 835 
because of the confidential relationship between the parties or the circumstances of the case and (4) which caused injury as a proximate consequence." Applin v. Consumers Life Ins. Co. ofNorth Carolina, 623 So.2d 1094, 1098 (Ala. 1993) (citations omitted).
A material fact is a fact that will induce action by the complaining party. Bank of Red Bay v. King, 482 So.2d 274
(Ala. 1985). "It is not necessary that the misrepresentation be the sole inducement: '[I]t is sufficient if it materially contributes and is of such a character that the [complaining party] would not have consummated the contract, had he known the falsity of the statement.' " Bank of Red Bay, 482 So.2d at 282 (citations omitted). The materiality of a given fact is generally a question for the jury. Id. Therefore, it is for a jury to determine whether Pitts would have accepted the June 30, 1993, check as an accord and satisfaction of any personal injury claim that she had under the uninsured motorist provision of her automobile insurance policy, had she known of the existence of the uninsured motorist coverage.
The critical question is whether the claims adjuster "was under a duty to communicate . . . because of the confidential relationship between the parties or the circumstances of the case" the existence of the uninsured motorist coverage to Pitts. Applin, 623 So.2d at 1098. Our supreme court has recognized that uninsured motorist coverage in Alabama "is a hybrid in that it blends the features of both first-party and third-party coverage. The first-party aspect is evident in that the insured makes a claim under his own contract." LeFevre v.Westberry, 590 So.2d 154, 159 (Ala. 1991). Pitts made a claim under her policy of insurance and Illinois National did not dispute liability under that claim; therefore, this case concerns first-party coverage. Under first-party coverage, "[c]learly, there is a covenant of good faith and fair dealing between the insurer and the insured. . . ." LeFevre, 590 So.2d at 159. Therefore, we hold that it is a question of material fact whether there existed a confidential relationship between Illinois National and Pitts. Chapman v. Allstate Ins. Co.,370 So.2d 980 (Ala. 1979); State Farm Mut. Auto. Ins. Co. v. Ling,348 So.2d 472 (Ala. 1977). From reading our Supreme Court's decisions on this issue, if a confidential relationship exists between an insurer and the insured, it appears that pursuant to the covenant of good faith and fair dealing, Illinois National was under a duty to disclose the existence of uninsured motorist coverage to Pitts. Lampton v. Allstate Ins. Co.,586 So.2d 205 (Ala. 1991); Chapman; Ling.
In viewing the evidence in a light most favorable to Pitts, a jury could conclude that the handwritten note at the bottom of the claims adjuster's June 29, 1993, letter was written on a copy of the letter on October 8, 1993, and that Pitts was not made aware that her insurance policy contained a medical benefits provision and an uninsured motorist provision until October 8, 1993, after she had signed the June 30, 1993, check. The effect of Pitts's cashing the June 30, 1993, check, without any knowledge of the uninsured motorist coverage, also relates to the proximate cause of damage. Considering the evidence that Pitts relied on the claims adjuster's representations in cashing the check, and that Illinois National refused to compensate Pitts because she had cashed the check, the question of proximate cause is also a question for the jury. Lyon v.Volkswagen of America, Inc., 676 So.2d 356
(Ala.Civ.App. 1996). Our supreme court has held in cases of intentional torts:
 "[T]he rules of proximate causation are more liberally applied than would be justified in negligence cases. This is especially true in cases of fraud where proximate cause is often articulated as a requirement of reasonable reliance where but for the misrepresentation or concealment it is likely that the plaintiff would not have acted in the transaction in question. In those instances where the defendant is found to have acted intentionally it is proper that a more remote causation result in liability than would be true in negligence cases. The policy to be followed is that liability should fall on the wrongdoer rather than to permit the victim to go uncompensated."
Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortgage Co.,390 So.2d 601, 607 (Ala. 1980); see also Rodopoulos v. Sam PikiEnters., Inc., 570 So.2d 661 (Ala. 1990). It is *Page 836 
undisputed that Pitts was injured in the September 26, 1992, accident and that her injuries were compensable under her policy of insurance with Illinois National. Illinois National's refusal to compensate Pitts under her policy shows evidence of damages.
Viewing the evidence most favorably to Pitts, we conclude that there exist genuine issues of material fact as to Pitts's fraudulent suppression claims; therefore, the trial court erred in entering the summary judgment as it relates to that claim.
 II. Fraudulent Misrepresentation
As distinct from fraudulent suppression, fraudulent misrepresentation requires that the plaintiff prove a false statement of a material fact that the plaintiff relied on to her detriment. Reeves Cedarhurst Dev. Corp. v. First Am. Fed.Sav. Loan Ass'n, 607 So.2d 180 (Ala. 1992).
Pitts's deposition testimony raises a question of fact as to whether she was induced into signing the June 30, 1993, check by the Illinois National claims adjuster's representation that the check was to keep her claim open, when in fact, the check was an accord and satisfaction of any personal injury claim that she might make under the uninsured motorist provision of her automobile insurance policy. Additionally, it appears from the scant record before us that Pitts was not aware of the uninsured motorist provision of her insurance policy until after she had signed the June 30, 1993, check.
Pitts's testimony establishes that she relied on the claims adjuster's representation in cashing the June 30, 1993, check. Pitts's reliance must be evaluated under the standard set out by our supreme court in Hickox v. Stover, 551 So.2d 259
(Ala. 1989):
 "[A] plaintiff . . . has not justifiably relied on the defendant's representation if that representation is 'one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth.' "
Hickox, 551 So.2d at 263 (quoting Southern States Ford, Inc. v.Proctor, 541 So.2d 1081, 1091-92 (Ala. 1989) (Hornsby, C.J., concurring specially)). See also Weaver v. Dan Jones Ford,Inc., 679 So.2d 1106 (Ala.Civ.App. 1996).
The claims adjuster's statement that the June 30, 1993, check was to keep Pitts's claim open was only a part of the representations made to Pitts. The claims adjuster's initial letters refer to Pitts's claim as a "medical claim" and do not mention uninsured motorist coverage. In fact, there is no mention of uninsured motorist coverage in any of the claims adjuster's letters; the first indication that there was uninsured motorist coverage was the June 30, 1993, check and the accompanying "Uninsured Motorist Coverage Release And Trust Agreement," which Pitts did not sign. A question of fact as to justifiable reliance can be raised by the entire context of a series of communications, as in this situation. See Love v.Townsend Ford, Inc., 623 So.2d 1153 (Ala. 1993).
The elements of materiality, causation, and damages are questions for the jury under the same rationale as discussed under the claim of fraudulent suppression. In viewing that evidence in a light most favorable to Pitts, we conclude that there exist genuine issues of material fact as to Pitts's fraudulent misrepresentation claim; therefore, the trial court erred in entering the summary judgment as it relates to that claim.
The summary judgment is due to be reversed, and the cause remanded for further proceedings.
REVERSED AND REMANDED.
THIGPEN, YATES, MONROE, and CRAWLEY, JJ., concur.