742 So.2d 1228 (1997)
ALFA MUTUAL FIRE INSURANCE COMPANY
v.
Tracie F. PAYTON.
Tracie F. Payton
v.
Alfa Mutual Fire Insurance Company.
2960518.
Court of Civil Appeals of Alabama.
October 10, 1997.
Rehearing Denied November 21, 1997.
*1229 Philip S. Gidiere, Jr., and Steven K. Herndon of Gidiere & Hinton, Montgomery, for appellant/cross appellee Alfa Mut. Fire Ins. Co.
Tyrone C. Means, Cynthia W. Clinton, Milton J. Westry, and Paul C. Williams of Thomas, Means & Gillis, P.C., Montgomery, for appellee/cross appellant Tracie F. Payton.
WRIGHT, Retired Appellate Judge.
Tracie F. Payton filed a complaint in the Lowndes County Circuit Court against Alfa Mutual Fire Insurance Company and Joe Wright, d/b/a Joe Wright Heating and Air Conditioning. Against Alfa, Payton asserted claims of fraudulent suppression; fraudulent misrepresentation; willful, reckless, or malicious misrepresentation; and deceit in the sale of a fire insurance policy. Payton asserted a claim of negligence against Joe Wright. Payton sought compensatory and punitive damages. Before trial, Payton entered into a pro tanto settlement with Joe Wright.
The case was tried before a jury in August 1996. The trial court denied Alfa's motion for a directed verdict and submitted Payton's fraud claims to the jury. The jury returned a verdict in favor of Payton and against Alfa, awarding Payton $80,000 in compensatory damages and $80,000 in punitive damages. The trial court entered a judgment accordingly.
*1230 Alfa filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial or, in the alternative, for remittitur. Following oral proceedings, the trial court entered an order, granting Alfa's motion for a new trial. The trial court stated, in pertinent part:
"The court has carefully considered all of the testimony and other evidence presented at the hearing on this motion, [has] thoroughly reviewed the well-argued positions of the parties and the trial transcript, and [has] considered the law submitted by all of the parties, including Alfa's brief in support of this motion, and the court determines that it erred in denying Alfa's motion for a directed verdict on [Payton's] claim for punitive damages at the close of [Payton's] case in chief, based on the evidence in this case. However, because the court is granting a new trial in this matter, this issue is irrelevant.
"... It is the definite and considered opinion of this court that [Alfa] did not receive a fair trial and that the verdict failed to do justice between the parties. The court has carefully considered all the testimony and other evidence at the hearing on [Alfa's] motion, [has] thoroughly reviewed the well-argued positions of the parties, and [has] considered the law submitted by all of the parties, and the court finds that [Alfa's] motion for a new trial is due to be granted. The court finds that the lack of response by juror [G.L.D., Jr.], on voir dire resulted in probable prejudice to [Alfa]. The court takes note that Hayneville is a community of approximately 800 to 1,000 people. [Payton] and her family own and operate two businesses within this community; [Payton] and [G.L.D., Jr.,] are of the same race and approximately the same age; [G.L.D. Jr.,] has lived in Hayneville for some period of time; [G.L.D. Jr.,] was the foreman of the jury that returned this verdict; and he admitted at post-trial that he knew [Payton] on sight and was able to put her name with her face at trial. [G.L.D. Jr.,] did not respond to the court's question on voir dire, `If you know Tracie Payton, please raise your hand....' The court finds that [Alfa] suffered probable prejudice because this juror did not answer the question as to knowing [Payton] truthfully."
Alfa appeals, raising two issues: (1) whether the trial court erred in denying its JNOV motion and (2) whether the trial court erred in failing to grant Alfa's motion for a remittitur. Payton cross-appeals, raising one issue: whether the trial court erred in granting Alfa's motion for a new trial. This case is before this court pursuant to § 12-2-7(6), Ala.Code 1975.

Appeal
A motion for a JNOV, like a motion for a directed verdict, is a procedural mechanism whereby one party challenges the sufficiency of the other party's evidence. First Financial Ins. Co. v. Tillery, 626 So.2d 1252 (Ala.1993). A motion for a JNOV permits the trial court to revisit its earlier decision denying the motion for a directed verdict. Tillery. The ultimate question as to either motion is whether the nonmoving party has presented sufficient evidence to allow submission of the case to the jury for a factual determination. Tillery.
A motion for a JNOV, which challenges the sufficiency of the evidence, is appraised by the substantial evidence rule. Franks v. Alfa Mut. Ins. Co., 669 So.2d 971 (Ala.Civ.App.1995). In order to withstand a motion for a JNOV, the non-movant must present substantial evidence to support each element of his/her cause of action or defense. Tillery. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a motion for a JNOV, this court must review the evidence in a light most favorable to the nonmoving party and must consider those reasonable evidentiary inferences a jury could have drawn. Franks.
The record reveals that in May 1992 Payton applied for a loan with the Farmers Home Administration (FHA) in Hayneville, Alabama, for the construction *1231 of a new home. In June 1992, prior to closing the loan, Melissa Williams, an FHA employee, informed Payton that FHA required a loan recipient to have fire insurance, with extended coverage sufficient to cover the loan amount. Williams testified that she told Payton to purchase a homeowners insurance policy to cover the contents of the house.
Prior to June 1992, Payton had never purchased insurance. Williams referred Payton to Gordon Ward, an Alfa agent and the insurance agent for Payton's mother. Payton spoke with Ward at the Alfa office in Hayneville. Payton testified that she could not remember the name of the insurance that Williams said she needed and that she told Ward that she wanted to purchase an insurance policy "that covers everything." She also stated that Ward completed an application and that she signed the application without reading it. The top of the application stated, "Application for Fire Insurance in the Alfa Mutual Fire Insurance Corporation." Payton further testified that because she trusted Ward, she did not read the application, and she stated that if she had read the application, she would not have understood that fire insurance would not cover anything inside the house, liability for guests, or water damage. Payton paid the premium and left the office.
On cross-examination, Payton admitted that Ward went through some papers with her, but she also testified that she did not understand what Ward was talking about. She also admitted that she probably had received a "Standard Fire Insurance" policy, but that she would not have reviewed it.
Ward testified that he is a licensed insurance agent, that Alfa trained him, and that Alfa sponsors his license. He stated that he sells life, automobile, house, health, and property insurance and that it is his responsibility to explain the insurance policies to his customers. Ward testified that he questions his customers to see how knowledgeable they are about insurance, that he then goes through Alfa's policies to determine which policy fits that customer's needs, and that he explains the policy he has chosen to the customer.
Ward testified that Alfa has several different house and home insurance policies. He testified that Alfa has three versions of a "Standard Fire Policy," that the SF-1 policy has the least amount of coverage that Alfa sells, and that he does not customarily sell an SF-3 policy because it is so similar to a homeowners policy that the customer might as well buy a homeowners policy. Ward also testified that a "Standard Fire Policy" covers only the building, but that contents coverage can be added to the policy.
Ward testified that Payton came to him to buy insurance coverage for her house, that he sold her an SF-1 policy, and that Payton's SF-1 policy did not have contents coverage. He then stated that Payton's insurance policy was really a "Builders Risk" policy and that contents coverage is not available under such a policy.
Ward stated that Payton wanted insurance to cover the amount of her FHA loan and that he made Payton aware of the coverages, that he told Payton that she could add contents coverage to her policy or change to a homeowners policy. He further stated that since Payton did not inquire about additional coverages or costs, he did not quote her the costs of broader coverage policies. He also admitted that he knew Payton had never purchased insurance before June 1992.
In March 1993 Ward inspected and photographed Payton's house to verify the completion of construction of the house. Ward testified that he walked through Payton's house, that he saw the furniture in the house, and that he commented on how nice the house looked. He also stated that he told Payton that he could add contents coverage to her policy or that she could purchase a homeowners insurance policy. Ward testified that Payton responded that she could not afford homeowners insurance. Payton denied that Ward told her that she could add contents coverage to her policy or that she could purchase homeowners insurance.
*1232 In June 1994 the air conditioner in Payton's house began leaking, damaging a closet, her children's clothes, and the carpeting in her living room. Payton called and reported the damage to an Alfa agent in the Hayneville office, who eventually sent Tim Harris, an adjuster, to Payton's house. Ward testified that he informed Payton that she did not have water damage coverage under her policy before the adjuster went to Payton's house.
Harris stated that when he inspected that damage to Payton's house, he was aware that there were questions about the coverage of Payton's claim. He also testified that when he told Payton that her damages were not covered by her insurance policy, Payton became upset because Alfa would not pay for the damage and her losses.
Payton testified that she was very upset to learn that her insurance policy did not cover the damage to her home and her children's clothing. She testified that she had to throw away some of the children's clothing that was ruined by mildew. Payton introduced into evidence receipts for the ruined clothing. She also testified that because she became so upset when Alfa denied her claim, she had to go to the doctor; that Alfa's denial of coverage had affected her relationship with her family; and that she developed high blood pressure. She further stated that her doctor has had difficulty in reducing her blood pressure and that because of her high blood pressure, she had had to go to the emergency room three times in two months before trial. Payton testified that she would not have purchased the insurance policy from Ward in June 1992 if she had known that it did not cover the contents of her house, liability, and water damage.
Tony Miller, a general contractor and Payton's expert, testified that the cost of repairing water damage to Payton's home totaled approximately $1,025, which included replacing part of the carpeting. Payton's mother testified that Alfa's denial of Payton's claim affected Payton. She stated that Payton lost a lot of weight, had been under a lot of stress, had developed high blood pressure, and had been in and out of the doctor's office constantly.
John F. Hulett testified by deposition that he owned a home and lived in Lowndes County. He testified that in 1984, he purchased insurance on his home from Ward and that when he purchased the policy, he told Ward that he wanted full coverage. Hulett testified that Ward did not explain any coverages to him or tell him that Alfa offered different types of policies to homeowners. In 1987 a water pipe burst in Hulett's home, causing damage. Hulett stated that he made a claim with Alfa for the damage and that Ward sent an adjuster to his home. He testified that the adjuster stated that his claim was not covered under his insurance policy. Hulett testified that he later obtained homeowners insurance, after he spoke with an acquaintance who told him that a homeowners policy covered "everything."
Alfa first argues that Payton did not present substantial evidence of fraud because, it says, there was no misrepresentation of a material fact, no justifiable reliance upon any misrepresentation, and no suppression of a material fact.
Our supreme court has held that in order for a plaintiff to succeed on a fraud claim, he or she must show the following:
"(1) that the defendant misrepresented a material fact; (2) that the defendant made the misrepresentation willfully to deceive, or recklessly without knowledge; (3) that the plaintiff relied on the misrepresentation; and (4) that the plaintiff incurred damage as a proximate consequence of the reliance. Ala.Code 1975, § 6-5-101; Harris v. M & S Toyota, Inc., 575 So.2d 74, 76 (Ala.1991). The plaintiff may show that the defendant's failure to disclose, or suppression of, a material fact, rather than an affirmative misrepresentation, induced the reliance and proximately caused the *1233 damage. Ala.Code 1975, § 6-5-102; Crigler v. Salac, 438 So.2d 1375, 1381 (Ala.1983)."
Booker v. United American Ins. Co., 700 So.2d 1333 (Ala.1997).
The jury heard conflicting testimony from Payton and Ward regarding Ward's statements to Payton in June 1992. The jury could have found that Ward had a duty to disclose the coverage limitations of the "Builders Risk" insurance policy to Payton because of the disparity between Payton's and Ward's knowledge of insurance policies and coverages, or the jury could have found that a confidential relationship existed between Payton and Ward, because Ward was acting as her insurance agent when he sold Payton the policy. See Lampton v. Allstate Ins. Co., 586 So.2d 205 (Ala.1991); Chapman v. Allstate Ins. Co., 370 So.2d 980 (Ala.1979); State Farm Mut. Auto. Ins. Co. v. Ling, 348 So.2d 472 (Ala.1977); Pitts v. Boody, 688 So.2d 832 (Ala.Civ.App.1996). The jury also could have found that Ward failed to disclose to Payton the limited coverage of a "Builders Risk" insurance policy and that Payton would not have purchased the policy if she had known of its limited coverage. Further, the jury could have found that Ward's completion and acceptance of the premium amount constituted a willful or reckless representation that Payton had insurance that "covered everything," Pacific Mut. Life Ins. Co. v. Haslip, 553 So.2d 537 (Ala.1989), that this representation was false, and that Payton's unpaid claim for damages to her home and her children's clothing was a proximate consequence of Ward's misrepresentation or suppression of the limited insurance coverage available under the "Builders Risk" policy. It is undisputed that Ward was an Alfa agent; therefore, Alfa would be liable for Ward's misrepresentations and suppressions of a material fact. Washington Nat'l Ins. Co. v. Strickland, 491 So.2d 872 (Ala.1985). The question of whether Payton justifiably relied on Ward's actions and statements was a question for the jury. Kelly v. Connecticut Mut. Life Ins. Co., 628 So.2d 454 (Ala. 1993); Howard v. Mut. Sav. Life Ins. Co., 608 So.2d 379 (Ala.1992). After reviewing the evidence presented at trial, we conclude that Payton presented substantial evidence of fraud and that the trial court properly submitted the issue to the jury.
Alfa next argues that the trial court erred in submitting Payton's claim for punitive damages to the jury.
In order to recover punitive damages, a plaintiff must prove by "clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." § 6-11-20(a), Ala. Code 1975; Ex parte Norwood Hodges Motor Co., 680 So.2d 245 (Ala.1996). Clear and convincing evidence is "[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." § 6-11-20(b)(4).
After reviewing the evidence presented at trial, we conclude that there was evidence, if believed by the jury, to support a finding, by clear and convincing evidence, that Alfa consciously, or deliberately, suppressed or misrepresented the coverage available under the builders risk insurance policy and that the jury could have believed that the fraud was malicious, oppressive, or gross. Therefore, the trial court did not err in submitting Payton's punitive damages claim or her claim for mental anguish damages to the jury. Haslip, supra.
Alfa next contends that Payton's fraud claims were barred by the statute of limitations.
The statute of limitations for fraud claims is two years. § 6-2-38(a), Ala.Code 1975. However, the statute of limitations for a fraud claim does not begin to run until the fraud is discovered. § 6-2-3, Ala. Code 1975; Kelly, supra. The question of *1234 when a party discovered, or should have discovered, the fraud is a question for the jury. Kelly. The question of when a plaintiff should have discovered the fraud is taken away from the jury and is decided as a matter of law only in cases where the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud. Id.
Alfa argues that Payton had notice of the alleged fraud when Ward went over the insurance application with Payton and when she received a copy of her "Standard Fire Policy."
Payton and Ward presented conflicting testimony regarding Ward's statements in June 1992. Payton testified that Ward did go over some papers with her, but that she did not understand what Ward was talking about. Payton had never purchased insurance before, a fact known to Ward. Moreover, Ward's testimony established that Payton had a "Builders Risk" policy, that Payton would have received a copy of a "Standard Fire Policy," and that a "Builders Risk" policy was more restrictive than a "Standard Fire Policy." Therefore, we conclude that when Payton knew, or should have known, of the fraud was a question for the jury and that the jury could have found that Payton did not have notice of the fraud until June 1994 when Alfa denied her claim for damages.
Alfa also argues that the trial court erred in denying its JNOV motion because the punitive damages verdict was excessive and that the trial court erred in refusing to reduce the punitive damages award. The trial court's grant of a new trial made the issue of remittitur moot. The trial court did not rule on that issue. Alfa raised the issue of remittitur before the trial court and has raised the issue before this court; therefore, in the interest of judicial economy, we address the issue of remittitur.
Having reviewed the factors set forth in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), and given the evidence of the reprehensibility of Alfa's actions and the effect those actions had on Payton, we cannot conclude that the one-to-one ratio of compensatory damages ($80,000) to punitive damages ($80,000) present in this case is unconstitutionally excessive.

Cross-Appeal
On cross-appeal, Payton contends that the trial court erred in granting Alfa's motion for a new trial on the ground of juror misconduct.
Our supreme court has stated the following with regard to alleged juror misconduct:
"Parties involved in litigation are entitled to true and honest answers from prospective jurors in order to help them exercise their discretion in the use of peremptory strikes and, when jurors fail to answer questions correctly, the parties are denied the exercise of that right. The proper inquiry on a motion for a new trial based on improper or nonexistent responses to voir dire questions is whether the response, or the lack of response, resulted in probable prejudice to the movant. Not every failure of a prospective juror to respond correctly to a voir dire question will entitle the losing party to a new trial.
"The determination of whether the complaining party was prejudiced by a juror's failure to answer voir dire questions is a matter within the discretion of the trial court and will not be reversed unless the court has abused its discretion. Some of the factors that this Court has approved for using to determine whether there was probable prejudice include: `temporal remoteness of the matter inquired about, the ambiguity of the questions propounded, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.'"
*1235 Union Mortgage Co. v. Barlow, 595 So.2d 1335, 1342-43 (Ala.1992) (quoting Freeman v. Hall, 286 Ala. 161, 167, 238 So.2d 330, 336 (1970)) (citations omitted).
The record reflects that on voir dire, the prospective jurors were asked, "If you know [Payton], please raise your hand...." Juror G.L.D., Jr., did not raise his hand in response to this question. At the hearing on Alfa's post-judgment motion, G.L.D., Jr., testified that he had seen Payton in the community, but that he did not know Payton. He testified that he recognized Payton's face, that he did not know her name until trial, and that he had never had a conversation with Payton. G.L.D., Jr., also stated that he did not know any of Payton's family and that he had lived in the Hayneville community for only two years.
Other than G.L.D., Jr.'s, recognizing Payton's face, there appears to be no relationship between G.L.D., Jr., and Payton. However, the trial court determined that G.L.D., Jr.'s, failure to answer the above-stated question resulted in probable prejudice to Alfa, stating as follows:
"Hayneville is a community of approximately 800 to 1,000 people. [Payton] and her family own and operate two businesses within this community; [Payton] and [G.L.D.,Jr.,] are of the same race and approximately the same age; [G.L.D.,Jr.,] has lived in Hayneville for some period of time; [G.L.D.,Jr.,] was the foreman of the jury that returned this verdict; and he admitted at post-trial that he knew [Payton] on sight and was able to put her name with her face at trial."
In Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69, 83 (1986), the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." The standards established in Batson apply to civil cases. Thomas v. Diversified Contractors, Inc., 551 So.2d 343 (Ala.1989). Therefore, we conclude that the trial court improperly considered that G.L.D., Jr., and Payton are of the same race in determining any probable prejudice to Alfa. Moreover, other jurors admitted "knowing" Payton; however, Alfa did not use a peremptory strike to remove them from the jury. Accordingly, we conclude that the trial court abused its discretion in holding that Alfa suffered probable prejudice from G.L.D., Jr.'s, lack of response to the question of whether he knew Payton, and in granting Alfa's motion for a new trial.
The judgment of the trial court is reversed and this cause is remanded to the trial court for entry of a judgment consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
REVERSED AND REMANDED.
YATES and MONROE, JJ., concur.
ROBERTSON, P.J., concurs in the result.
CRAWLEY, J., concurs in the result, with opinion.
THOMPSON, J., dissents.
CRAWLEY, Judge, concurring in the result.
I agree that we must reverse the trial court's grant of Alfa's motion for a new trial, but I do not agree that Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), dictates that result.
THOMPSON, Judge, dissenting.
I believe that the trial court erred in denying Alfa's motion for a judgment notwithstanding the verdict, because I conclude *1236 that Payton's claims were barred by the statute of limitations. Therefore, I must respectfully dissent.
In Alabama, all claims alleging fraud are subject to a two-year statute of limitations. § 6-2-38, Ala.Code 1975. A fraud cause of action accrues upon the discovery of the fraud. § 6-2-3, Ala.Code 1975. The Supreme Court of Alabama has held: "Fraud is `discovered' when it ought to or should have been discovered. Thus, the time of `discovery' is the time at which the party actually discovered the fraud, or had facts that, upon closer examination, would have led to the discovery of the fraud." Stafford v. Mississippi Valley Title Ins. Co., 569 So.2d 720, 724 (Ala.1990). Fraud is deemed to be discovered, as a matter of law, at the time the party receives documents that would put him or her on such notice that would lead to the discovery of the fraud. Gray v. Liberty Nat'l Life Ins. Co., 623 So.2d 1156 (Ala.1993).
It is undisputed that Payton signed the insurance contract and that she knows how to read. Payton received a copy of the insurance contract approximately one month after she signed it, and she renewed the policy twice. Gordon Ward, the Alfa agent who sold the policy to Payton, testified that he reviewed the policy with her when she applied for the insurance. Payton testified that Ward talked to her about "something" and that it was "probably" about the insurance. Payton acknowledges that she signed a document entitled "Application for Fire Insurance." When asked whether she read or noticed the title of the document, Payton replied, "I don't know that I paid any attention."
Payton saw the insurance application at the time she signed it in Ward's office in 1991. One month later, she received a copy of the policy itself. Payton had in her possession documents that upon any examination would have revealed the fraud that she now alleges. I believe that, as a matter of law, Payton discovered, or at least should have discovered, the alleged fraud upon receiving the insurance contract in 1991. Because Payton did not file this action until 1995, her fraud claims are barred by the statute of limitations.
Assuming, arguendo, that Payton's claims are not time-barred, I also believe that the trial court erred on another ground in not granting Alfa's motion for a judgment notwithstanding the verdict. I believe that, as a matter of law, Payton failed to establish all of the elements of her fraud claims against Alfa. Rule 9(b), Ala. R. Civ. P., requires a plaintiff to allege fraud and the circumstances constituting fraud with particularity. In its pre-trial order, the trial court summarized the particular nature of Payton's allegations of fraud.
One allegation of fraud made by Payton was that Alfa, through its agent Ward, fraudulently misrepresented to Payton that she was purchasing homeowner's insurance. The evidence presented by Payton at trial does not support this allegation. Payton testified that she could not recall what type of insurance Ward said he was selling her. More importantly, Payton testified that she did not think Ward had made any false statements to her. Thus, Payton's own testimony defeats the element of a misrepresentation of a material fact in her claim alleging fraudulent misrepresentation.
Payton also alleged fraud by suppression, specifically that Ward suppressed the fact that she was purchasing insurance for less than complete coverage. However, Payton testified repeatedly that she "did not recall" what Ward said to her when she applied for the insurance policy. She testified that he talked about something and that she assumed it was about the insurance or the policy. Payton testified that Ward went over the policy, but that she did not pay attention. Payton also testified that she did not understand what Ward told her, but she did not ask him questions about the insurance. Thus, Payton presented no evidence that Ward suppressed any fact from her.
*1237 I also believe that the trial court erred in refusing to grant Alfa's motion for a judgment notwithstanding the verdict on the punitive damages issue. Payton's testimony reveals her great confusion and almost total lack of recall concerning her conversation with Ward that took place when she applied to purchase the insurance. Her testimony in no way rises to the "clear and convincing" level of evidence of fraud that is required to support an award of punitive damages. See § 6-11-20(b)(4), Ala.Code 1975. In its order granting a new trial, the trial court itself acknowledged that, "based on the evidence in this case," it had erred in not granting Alfa's motion for a directed verdict on the issue of punitive damages.
Because I believe Alfa was entitled to a judgment notwithstanding the verdict, I dissent.