Hilb, Rogal Hamilton Company ("HRH"), Hilb, Rogal Hamilton of Alabama, Inc. ("HRH Alabama"), and BDF-Meadows, Inc. ("BMI") (collectively referred to as "the HRH corporations"), appeal from the trial court's order denying their postjudgment motion in an action filed against them by Werner Beiersdoerfer. We reverse and remand.
 I. Factual Background and Procedural History
This is the second time this case has been before this Court. In the previous appeal, we affirmed the judgment in part, reversed it in part, and remanded the cause for further proceedings. Beiersdoerfer v. Hilb, Rogal HamiltonCo., 953 So.2d 1196 (Ala. 2006) ("BeiersdoerferI"). In Beiersdoerfer I, we stated the pertinent facts as follows:
 "Substantive Facts
 ". . . .
 "On January 1, 1998, Beiersdoerfer, the sole shareholder of Beiersdoerfer-Meadows, Inc. ('BMI'), an insurance agency, sold all of the stock in BMI to HRH for $700,000 and executed a written stock-purchase agreement. In addition, Beiersdoerfer agreed to work for HRH for two years and executed a written employment agreement. In both the stock-purchase agreement and the employment agreement, Beiersdoerfer agreed that he would not compete with HRH for a specified period of time. As an employee of HRH, Beiersdoerfer continued to manage the accounts of BMI and to supervise subordinates.
 "In June 2000, Beiersdoerfer told Richard Simmons III, regional director of HRH, that Beiersdoerfer wanted to terminate his employment with HRH. Beiersdoerfer offered to repurchase BMI from HRH. Simmons told Beiersdoerfer that Simmons would have to discuss Beiersdoerfer's offer to purchase BMI with Mel Vaughn, the chief operating officer of HRH, because Simmons did not have authority to accept or to *Page 1047 
reject such an offer on behalf of HRH. Vaughn rejected Beiersdoerfer's offer.
 "After Vaughn rejected Beiersdoerfer's offer to repurchase BMI, Beiersdoerfer and Simmons began discussing the possibility of Beiersdoerfer's continuing to manage the accounts of BMI for HRH as an independent broker instead of as an employee. Beiersdoerfer asked Simmons whether he had the authority to agree to such an arrangement without seeking approval from the home office of HRH in Richmond, Virginia. Simmons responded `that he had the authority and the decision could be made locally and no Richmond.' (At trial, however, Vaughn testified that Simmons did not have such authority.)
 "Thereafter, Beiersdoerfer and Simmons met in mid-November 2000 ('the mid-November meeting'). Simmons asked Beiersdoerfer to go over his proposal to manage the accounts of BMI as an independent broker. Beiersdoerfer stated that he proposed to resign as an employee of HRH, to manage the accounts of BMI as an independent broker, and to split the commissions generated by those accounts with HRH. Simmons suggested that HRH should receive 60% of the commissions and Beiersdoerfer should receive 40%. Beiersdoerfer agreed and stated that he would pay all of his expenses out of his share of the commissions. Beiersdoerfer further stated that the arrangement would continue until HRH received an amount equal to the $700,000 it had paid Beiersdoerfer for the stock in BMI less any profits already received by HRH from the operation of BMI ('the monetary goal'). Finally, Beiersdoerfer stated that, under his proposal, any new business referred by HRH to BMI would remain with HRH when the arrangement ended and any new business generated by Beiersdoerfer or referred by outside brokers would go with him when the arrangement ended. At the end of this discussion, Simmons said: `I understand and I agree.' Simmons then told Beiersdoerfer that he was leaving at the end of the year to take another position, and he asked Beiersdoerfer to explain the arrangement to David Hobbs, the president of HRH Alabama. After the mid-November meeting, Beiersdoerfer made informal arrangements to sublease office space in another building where he planned to manage the BMI accounts as an independent broker; he arranged for a moving company; and he moved his office.
 "On November 21, 2000, Beiersdoerfer, Simmons, and Hobbs met to discuss Beiersdoerfer's managing the BMI accounts for HRH as an independent broker ('the November 21 meeting'). Beiersdoerfer recited the terms he and Simmons had discussed at the mid-November meeting. Hobbs complained that two BMI agents, Kevin Tangney and Heidi Parker, who is Beiersdoerfer's daughter, were planning to leave BMI without having signed covenants not to compete with HRH. Hobbs said that he could cause trouble for Parker and Tangney even though they had not signed a covenant not to compete. Beiersdoerfer said he would continue to manage the BMI accounts until HRH received $75,000 more than the monetary goal if Hobbs would refrain from causing trouble for Parker and Tangney. Hobbs stated: `I agree.' Hobbs then told Beiersdoerfer that, because they were going to implement the independent-broker arrangement, Beiersdoerfer should take BMI's files to his office. Although Hobbs said that he wanted Simmons to reduce the terms of the agreement between Beiersdoerfer and HRH to writing, neither he nor Simmons *Page 1048 
indicated that the assent of HRH to the agreement was contingent on its being reduced to writing. Beiersdoerfer testified at trial that no details of the agreement remained unresolved at the end of the November 21 meeting. Simmons admitted at trial that neither he nor Hobbs told Beiersdoerfer at the November 21 meeting that any details of their agreement remained unresolved.
 "The next day, Beiersdoerfer moved BMI's files from the offices of HRH to his new office. While he was at HRH's offices, he saw Simmons, who stated, `I was glad that we were able to reach an agreement.' On December 1, Beiersdoerfer executed a sublease on his new office.
 "After the mid-November meeting and the November 21 meeting, Simmons instructed the comptroller of HRH to pay Beiersdoerfer 40% of the revenue of BMI as a commission after December 31. The comptroller then prepared a budget for the next year showing Beiersdoerfer as receiving 40% of the revenue of BMI as a commission.
 "On November 27 and 28, 2000, Simmons and Hobbs met with Vaughn at the home office of HRH in Richmond ('the November 27 and 28 meetings'). Vaughn said that `there should be a one-year consulting agreement [with Beiersdoerfer] with a non-piracy agreement upon termination and that it should have a 30-day termination clause and that it was — should only be needed for 90- to [180] days.' Vaughn's plan was that Wayne Bowling, an HRH employee, would become familiar with the BMI accounts during this 90- to [180]-day period and the consulting agreement would then be terminated. No one told Beiersdoerfer about Vaughn's instructions at the November 27 and 28 meetings.
"When Beiersdoerfer returned to his office after the New Year's Day holiday, he found an unsigned faxed letter from Hobbs dated December 29. The letter stated:
 "`The purpose of this letter is to outline the terms of our agreement:
 "`1. Werner Beiersdoerfer will retire from HRH effective January 1, 2000 [sic]. At that time he will become an independent broker, serving the accounts assigned to him. See attached list. We agree that the long-term objective is to orderly transfer these accounts to an HRH producer.
 "`2. All Fees Commissions will be paid to HRH. HRH will then pay Mr. Beiersdoerfer 40% of the commissions and fees generated by these assigned accounts.
 "`3. The files on these accounts will remain with Mr. Beiersdoerfer, but will be returned at any time to HRH at their request.
 "`4. HRH will not extend errors and omissions coverage to Mr. Beiersdoerfer.
 "`5. Mr. Beiersdoerfer agrees that at no time in the future will he work in collusion with his daughter, Heidi Parker, to solicit these assigned accounts.
 "`6. If at any time in the future, either Werner Beiersdoerfer or HRH becomes dissatisfied with this arrangement, either party can cancel this agreement with 30 days notice. At that time, Mr. Beiersdoerfer agrees to never contact or solicit these assigned accounts.'
"On January 2, Beiersdoerfer telephoned Simmons and left a message on his answering machine. The message stated that Hobbs's December 29 letter was satisfactory except for the statement in paragraph 4 that HRH would *Page 1049 
not provide Beiersdoerfer with errors-and-omissions coverage and the statement in paragraph 6 that Beiersdoerfer would `never contact' clients of BMI. Simmons acknowledged that he received the message and that he conveyed the information to Hobbs. That same day, Hobbs signed a payroll authorization form listing Beiersdoerfer's date of termination as an employee of HRH as December 31, 2000.
"On January 3, Hobbs showed Vaughn a copy of Hobbs's December 29 letter. Vaughn became angry and asked Hobbs if he understood that the letter amended the employment and stock-purchase agreements. Vaughn instructed Hobbs to `get out' of the agreement with Beiersdoerfer. Hobbs and Fred Renneker, the chief executive officer of HRH Alabama, went to Beiersdoerfer's office on January 8. Hobbs gave Beiersdoerfer a letter signed by Hobbs and dated January 5. In pertinent part, the letter stated:
 "`I have made the decision to terminate your employment as of February 9, 2001. Since we have not finalized our arrangement (earlier faxed to you), that proposed offer is retracted as well.'
"After giving Beiersdoerfer this letter, Hobbs said, `Mel [Vaughn] didn't like the agreement.' Beiersdoerfer responded that they had an agreement. Renneker then said that the agreement had not been reduced to writing and signed. Beiersdoerfer responded that oral agreements were binding in Alabama, that he intended to abide by the oral agreement they had reached, and that he expected HRH to abide by it as well.
"A few days after this meeting, Beiersdoerfer's wife received a letter from HRH informing her of her right, under COBRA, to continue her health insurance coverage under the group plan for up to 18 months after the termination of Beiersdoerfer's employment on December 31, 2000. Later in January, HRH generated a payroll authorization form to reinstate Beiersdoerfer's pay and benefits as an employee through February 9, 2001.
 "Procedural Facts
"Alleging that Beiersdoerfer had violated the covenants not to compete in the stock-purchase and employment agreements, the HRH [corporations] sued him, alleging breach of contract, breach of fiduciary duty, and tortious interference with business relationships. Beiersdoerfer counterclaimed, alleging breach of contract, misrepresentation, suppression, defamation, defamation per se, conspiracy, and invasion of privacy.
"As the factual basis of his breach-of-contract claim, Beiersdoerfer alleged that Beiersdoerfer and HRH had formed an oral contract at the mid-November and November 21 meetings and that HRH had breached that oral contract. As part of the factual basis of his misrepresentation claim, Beiersdoerfer alleged that, after September 2000 and before the mid-November meeting, Simmons had misrepresented to Beiersdoerfer `[t]hat Simmons possessed the authority to enter a contract on behalf of [HRH] regarding Beiersdoerfer's management of accounts' and `[t]hat the agreement regarding Beiersdoerfer's management of accounts could be made "locally," and did not require the "approval of Richmond."' In addition, Beiersdoerfer alleged that Simmons and Hobbs, at the November 21 meeting, had misrepresented the intent of HRH `to be bound by the terms and conditions agreed upon,' `to perform the terms and conditions for a time period sufficient to achieve the monetary goal agreed upon,' *Page 1050 
and `to reduce the terms and conditions to writing.' As the factual basis of his suppression claim, Beiersdoerfer alleged that, between November 2000 and January 8, 2001, Simmons and Hobbs had suppressed the fact `[t]hat Simmons did not possess the authority to enter a contract on behalf of [HRH] regarding Beiersdoerfer's management of accounts'; the fact `[t]hat the agreement regarding Beiersdoerfer's management of accounts could not be handled `locally'; the fact that such an agreement `did require the "approval of Richmond"'; the fact `that [HRH] did not intend to honor the terms and conditions agreed upon'; the fact `that [HRH] formed an intent to repudiate the agreement reached within 90 to 180 days'; the fact `that Mel Vaughn had instructed them that the most he could live with was a one-year consulting agreement terminable on 30-day's notice with a non-piracy clause, and that he expected that it would only be needed for 90 to 180 days'; and the fact `that [HRH] had no intention of allowing the parties to perform as agreed upon.'
"The HRH [corporations] moved for a summary judgment on Beiersdoerfer's counterclaims. However, the trial court denied the summary-judgment motion, and the case proceeded to trial. The HRH [corporations], on the one hand, and Beiersdoerfer, on the other, moved for a JML [judgment as a matter of law] at the close of all the evidence. As grounds for a JML on Beiersdoerfer's breach-of-contract claim, the HRH [corporations] asserted that Beiersdoerfer had not introduced substantial evidence tending to prove that the parties had mutually assented to all of the terms of the putative oral contract and substantial evidence tending to prove that the putative oral contract specified how it had modified the stock-purchase and employment agreements. As grounds for a JML on Beiersdoerfer's misrepresentation claim, the HRH [corporations] asserted that Beiersdoerfer had not introduced substantial evidence indicating that Simmons's representation was false, that Beiersdoerfer had relied upon Simmons's representation, and that Beiersdoerfer was damaged by relying upon Simmons's representation. As the ground for a JML on Beiersdoerfer's suppression claim, the HRH [corporations] asserted that Beiersdoerfer had not introduced substantial evidence indicating that the HRH [corporations] had suppressed any facts.
"The trial court entered a JML in favor of the HRH [corporations] on all of Beiersdoerfer's claims except his breach-of-contract, misrepresentation, and suppression claims. The trial court entered a JML in favor of Beiersdoerfer on all of the claims of the HRH [corporations] except their breach-of-contract claim. The trial court then charged the jury on the HRH [corporations'] breach-of-contract claim and Beiersdoerfer's breach-of-contract, misrepresentation, and suppression claims. The trial court did not instruct the jury that it could not return a verdict for Beiersdoerfer on both his breach-of-contract claim and his misrepresentation claim. The verdict form the trial court gave the jury to be used if the jury found in favor of Beiersdoerfer allowed the jury to return a verdict for Beiersdoerfer both `[f]or breach of contract' and `[f]or fraud' without requiring the jury to specify whether a verdict for Beiersdoerfer `[f]or fraud' was a verdict on the misrepresentation claim only, a verdict on the suppression claim only, or a verdict on both of those claims.
"Immediately after the trial court charged the jury and before the jury *Page 1051 
retired to consider its verdict, counsel for the HRH [corporations], outside the presence of the jury, stated on the record:
 "`It seems to me that Mr. Beiersdoerfer should — and I admit I have not researched — but he should elect between his remedies, fraud and breach of contract, since they're based upon the same facts. And there's the potential for the jury, if they rule his way on both of those claims, to award double damages. But I admit to you I have not researched that as of yet.'
"The trial court did not give the jury any additional instructions in response to this statement. Thereafter, the jury returned a verdict in favor of Beiersdoerfer on the HRH [corporations'] breach-of-contract claim and in favor of Beiersdoerfer on his claims against the HRH [corporations]. Using the verdict form provided by the trial court, the jury awarded Beiersdoerfer $250,000 `[f]or breach of contract' and $1,000,000 `[f]or fraud.' The trial court entered judgment on the jury verdict.
"The HRH [corporations] renewed their motion for a JML and moved, in the alternative, for a new trial or a remittitur. As one of the grounds of their motion for a new trial, the HRH [corporations] asserted that the jury verdict was inconsistent because it awarded Beiersdoerfer damages for both breach of contract and fraud, claims that presupposed inconsistent facts. Although the trial court denied the HRH [corporations'] motion for a JML, it awarded them a new trial on the ground that the verdict returned by the jury was inconsistent. The trial court reasoned:
 "`Beiersdoerfer contended before the jury that a valid contract existed which was breached by HRH and he was entitled to damages as a result of this breach. At the same time Beiersdoerfer contended before the jury that the contract was invalid because Simmons fraudulently represented to [Beiersdoerfer] that [Simmons] had the authority to enter into the contract without the approval of the home office in Richmond, Virginia, when in fact he did not have such authority and he was entitled to damages for the fraudulent misrepresentation. These theories of recovery are factually inconsistent and a general verdict allowing recovery under both theories is self-contradictory. It is well settled under Alabama law that a plaintiff may present alternative, inconsistent, and mutually exclusive claims to the jury. King v. Cooper Green Hospital, 591 So.2d 464 (Ala. 1991). However, a plaintiff may recover under only one of those claims. United States Fidelity Guaranty Company v. McKinnon, 356 So.2d 600 (Ala. 1978). No instruction was given to the jury in that regard, and the jury in fact awarded damages for both breach of contract and fraud.'
"The trial court acknowledged that a portion of Beiersdoerfer's suppression claim did not presuppose the invalidity of the putative oral contract. However, the trial court reasoned:
 "`The verdict on the fraud claims was in the form of a general verdict and did not distinguish between the fraudulent misrepresentation and the fraudulent suppression claims. The Court therefore cannot determine from the verdict whether the jury award [for fraud] was based upon the fraud claim of misrepresentation, which would be inconsistent with the breach of contract award and would be improper, or was based upon the fraud claim of suppression, which *Page 1052 
would perhaps be permissible. Therefore, the verdict rendered herein is inconsistent, and the judgment entered pursuant to said verdict must be set aside.'"
953 So.2d at 1199-1204 (footnote omitted). Beiersdoerfer appealed from the judgment granting the HRH corporations' motion for a new trial; the HRH corporations cross-appealed from the judgment denying their motion for a judgment as a matter of law ("JML").
We affirmed the trial court's judgment denying the HRH corporations' motion for a JML as to Beiersdoerfer's breach-of-contract, misrepresentation, and fraudulent-suppression claims, concluding that Beiersdoerfer introduced sufficient evidence to allow those claims to be submitted to the jury. We dismissed the HRH corporations' cross-appeal insofar as it challenged the trial court's denial of a JML as to Beiersdoerfer's promissory-fraud claim because that challenge was moot. We reversed the judgment granting the motion for a new trial. We noted that the HRH corporations did not request a jury instruction that Beiersdoerfer could recover damages on only one of his claims — breach of contract or fraud — but not both, and that they did not object to the jury instructions after the trial court gave them. We held that the trial court exceeded its discretion in ordering a new trial in the absence of a timely objection to the jury charges as given.
On remand, the trial court held a status conference, at which the HRH corporations sought a ruling on the motion for a remittitur they had filed in 2002 after the trial had concluded. At the judge's request, the parties filed briefs addressing the issue whether the trial court had jurisdiction to hear the motion for a remittitur. On November 17, 2006, the trial court entered an order vacating its order of July 19, 2002, granting the HRH corporations' motion for a new trial; reinstating the judgment of April 3, 2002, entered on the jury verdict; and vacating its order staying execution on the judgment. That order did not address the motion for a remittitur. On November 27, 2006, the HRH corporations filed a motion requesting a ruling on their 2002 motion for a remittitur and also filed a new motion for a remittitur based on the same grounds as the 2002 motion, i.e., that the damages award for mental anguish was excessive and that they were entitled to a setoff for a percentage of the sales commissions that had been paid to Beiersdoerfer pursuant to the contract that was the basis of this action. At a hearing in December 2006, both parties argued the jurisdictional issue; the HRH corporations also argued the merits of their motion for a remittitur. On December 19, the trial court entered the following order:
 "This cause was heard on a Request filed by the Plaintiff/Counter-Defendant, Hilb, Rogal 
Hamilton Company ('HRH') for Ruling Or, In The Alternative, Renewed Post-Judgment Motions. Counsel for all parties were present. In February 2001, HRH commenced this action by filing a request for injunction and other relief against the Defendant/Counter-Plaintiff, Werner Beiersdoerfer ('Beiersdoerfer'). Thereafter Beiersdoerfer filed a counterclaim seeking damages for breach of contract and fraud. On March 11, 2002, a jury returned a verdict against HRH on Beiersdoerfer's counterclaim and awarded compensatory damages in the amount of $250,000.00 for breach of contract and $1,000,000.00 for fraud for a total compensatory damage[s] award of One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00). The jury also found for Beiersdoerfer on the claims of HRH. *Page 1053 
 "HRH filed post-judgment motions including a motion for judgment as a matter of law, a new trial and remittitur. After hearing these motions the Court entered an Order on July 19, 2002, granting HRH's Motion for New Trial but did not rule on any of the remaining motions, including the Motion for Remittitur. Beiersdoerfer appealed this Order and HRH filed a Cross-Appeal. On September 22, 2006, some four years later, the Supreme Court reversed this Court's Order of July 19, 2002, and remanded the case for further proceedings consistent with the Supreme Court's decision.
 "On October 24, 2006, the Court held a Status Conference with the parties to consider such actions as may be appropriate consistent with the Supreme Court's Order. Upon consideration of the arguments and briefs of counsel this Court entered an Order on November 17, 2006, which vacated the Court's July 19, 2002, Order granting HRH a new trial and reinstated the jury verdict and order of the Court entered on April 3, 2002.
 "HRH now requests the Court to consider and issue a ruling on its Motion for Remittitur. Beiersdoerfer argues that this Court does not have jurisdiction to consider and/or grant remittitur because these motions were overruled as a matter of law pursuant to Rule 59.1[, Ala. R. Civ. P.]. Under Rule 59(g)[, Ala. R. Civ. P.,] all such motions remain pending until ruled upon by the Court subject to the provisions of Rule 59.1. Beiersdoerfer argues that since the Court did not rule on HRH's Motion for Remittitur within ninety (90) days, it constitutes a denial of such motion. HRH argues that since the Court granted the Motion for New Trial, the Motion for Remittitur was rendered moot. In support for that argument HRH cites Alfa Mutual Fire Insurance Co. v. Payton, 742 So.2d 1228[, 1234] (Ala.Civ.App. 1997) which referenced, in passing upon other matters, the statement that `the trial court[']s grant of a new trial made the issue of remittitur moot.' It appears to the Court that neither party here raised or argued this issue in their appeal to the Supreme Court nor did the Supreme Court address this issue. In any event, both parties agree that any action this Court enters now will be appealed for further review to the Supreme Court. Therefore, based upon the plain language of Rule 59(g) and Rule 59.1 the Court is of the opinion that Beiersdoerfer is correct and that this Court lacks jurisdiction to consider and/or grant a remittitur at this time.
 "At the hearing on this motion the Court allowed HRH to present its argument on the issue of remittitur in the event that this Court agreed with the argument of HRH that the Motion for Remittitur was still viable and should be considered by the Court. While the Court finds that it lacks jurisdiction to consider or grant a remittitur, it would observe that it would likely not grant HRH's motion. HRH argues that the jury verdict of $1,000,000.00 as compensatory damages on Beiersdoerfer's fraud claim was basically compensation for mental anguish and that Beiersdoerfer failed to offer sufficient evidence to sustain the verdict and therefore the jury abused its discretion. First, a jury verdict is presumed correct. Secondly, the Court recalls some of the testimony in this case, particularly the testimony of Mel Vaughn, CEO of HRH to the effect that he would only approve a one-year consulting agreement with Beiersdoerfer with a non-piracy clause and a 30-day notice provision allowing either party to cancel the agreement and further the *Page 1054 
agreement would probably only be in place for approximately 90-180 days or until such time that the book of business could be transferred to another agent. This statement was made to his local officers, but not to Beiersdoerfer. Beiersdoerfer relied upon these representations and opened an office. In addition, the Court recalls the testimony of Beiersdoerfer and observed his apparent distress as to the effect the conduct of HRH had on both him and his family. Based upon the evidence in this case the Court would find that there was sufficient evidence to sustain the verdict by the jury and that the jury did not abuse its discretion.
 "However, since the Court has found that it lacks jurisdiction to consider [HRH's] Motion for Remittitur the pending motion by [HRH] is OVERRULED."
The HRH corporations appealed from the order denying their postjudgment motion for a remittitur.
 II. Analysis
The HRH corporations contend that the trial court erred in concluding that it did not have jurisdiction to rule on their motion for a remittitur. They also contend that they did not waive any argument as to a remittitur even though they did not raise any such argument in that regard in their earlier cross-appeal.
 A Whether the Trial Court Had Jurisdiction to Consider the Motion for a Remittitur
The trial court agreed with Beiersdoerfer's argument that the postjudgment motion for a remittitur filed by the HRH corporations after the trial concluded in 2002 was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P., after it had remained pending for 90 days, and, therefore, that the trial court no longer had jurisdiction to rule on the motion on remand.
The HRH corporations argue that once the trial court granted their motion for a new trial, their motion for a remittitur became moot and, therefore, could not have been a pending motion denied by operation of law after 90 days. They also argue that the Alabama Rules of Civil Procedure did not give them a right to have the trial court rule on their motion for a remittitur after it granted their motion for a new trial and that, because the trial court granted their motion for a new trial, they were not obligated to raise in their cross-appeal their arguments regarding remittitur, i.e., that the mental-anguish-damages award was excessive and that they were entitled to a setoff for a percentage of certain sales commissions paid to Beiersdoerfer. Beiersdoerfer argues that the trial court had no authority to rule on the HRH corporations' motion for a remittitur on remand because, he argues, all postjudgment motions not ruled on by the trial court were denied by operation of law after 90 days; he further argues that the HRH corporations waived any argument as to a remittitur because they had a right to, but did not, raise any such argument in that regard in their cross-appeal.
Rule 59.1 states:
 "No post-judgment motion filed pursuant to Rules 50, 52, 55, or 59 shall remain pending in the trial court for more than ninety (90) days, unless with the express consent of all the parties, which consent shall appear of record, or unless extended by the appellate court to which an appeal of the judgment would lie, and such time may be further extended for good cause shown. A failure by the trial court to dispose of any pending post-judgment motion within the time permitted hereunder, or any *Page 1055 
extension thereof, shall constitute a denial of such motion as of the date of the expiration of the period."
The trial court entered its order granting the HRH corporations' motion for a new trial on the 87th day after they filed their postjudgment motions in 2002. The effect of that order was to vacate the judgment entered on the jury verdict awarding damages to Beiersdoerfer. At that point, having attained the new trial sought in the postjudgment motion, all other relief requested in the alternative by the HRH corporations became moot, including their motion for a remittitur. Because the order granting the motion for a new trial rendered the motion for a remittitur moot, it therefore was no longer pending and was not subject to Rule 59.1. see Security Mut. Fin. Corp. v. Harris,288 Ala. 369, 373, 261 So.2d 43, 47 (1972) ("Since a new trial must be had, the question of the excessiveness of damages awarded in this case is now moot."). See also Alfa Mut. Fire Ins. Co.v. Payton 742 So.2d 1228, 1234 (Ala.Civ.App. 1997),rev'd on other grounds, 742 So.2d 1237 (Ala. 1999) ("The trial court's grant of a new trial made the issue of remittitur moot.").
When we reversed that aspect of the trial court's judgment granting the HRH corporations' motion for a new trial inBeiersdoerfer I and remanded the case to the trial court for further proceedings, our mandate contemplated the reinstatement of the judgment entered on the jury verdict. At that point, the case stood exactly as it did after the trial concluded in 2002, when the trial court initially entered a judgment on the jury verdict. The trial court entered a new judgment on the jury verdict on November 17, 2006. Any post-judgment motions that had been filed after the entry of the first judgment in 2002, as well as any additional postjudgment motions that were timely filed after the entry of the judgment on November 17, 2006, were then ripe for consideration by the trial court. In other words, the HRH corporations' motion for a remittitur filed in 2002 that had been mooted by the order granting their motion for a new trial became ripe for consideration by the trial court after the entry of the 2006 judgment, as did the motion for a remittitur filed by the HRH corporations on November 27, 2006. The trial court erred in concluding that it did not have jurisdiction to consider the motion for a remittitur.[1] It therefore erred as a matter of law in denying the HRH corporations' motion for a remittitur on that basis.
B. Whether the Cross-Appeal in Beiersdoerfer IShould Have Addressed the Motion for a Remittitur
When the trial court entered the order granting the HRH corporations' motion for a new trial in 2002, it implicitly denied their postjudgment motion for a JML.[2] When the verdict winner, Beiersdoerfer, *Page 1056 
appealed, the verdict losers, the HRH corporations, clearly were obligated to challenge in a cross-appeal the trial court's order rejecting their postjudgment motion for a JML, and they did so, Beiersdoerfer insists that the HRH corporations also should have raised in their cross-appeal their arguments as to the merits of a remittitur and that, because they did not, they have waived their right to raise those arguments now. The HRH corporations argue that they did not have a right to a ruling in 2002 on their motion for a remittitur and that they were under no obligation to present their arguments in support of a remittitur in their cross-appeal in Beiersdoerfer I.
Rule 50(c)(1), Ala. R. Civ. P., requires a trial court to rule on a party's motion for a new trial if the courtgrants the party's postjudgment motion for a JML:
 "If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial."
Thus, if the trial court grants the motion for a postjudgment JML, then the moving party has a right to a ruling from the trial court on its alternative motion for a new trial. Exparte Handley, 494 So.2d 24, 24-25 (Ala. 1986). The moving party must raise on appeal the issue of the trial court's failure to rule on the motion for a new trial under such circumstances, or that issue is waived. The converse is not true when the trial court denies a party's motion for a postjudgment JML. In that instance, the party has no right conferred upon it to require a ruling from the trial court on alternative grounds asserted for post-judgment relief pursuant to Rule 59, Ala. R. Civ. P. Rule 50(d), Ala. R. Civ. P., states only that "[i]f the motion for a judgment as a matter of law is denied, the party who prevailed on the motion may, as appellee, assert grounds entitling the party to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for judgment."
Here, the trial court denied the HRH corporations' motion for a post-judgment JML but granted their motion for a new trial. The trial court did not rule on their motion for a remittitur; indeed, there was no need for such a ruling because the trial court had already granted the HRH corporations the greater relief of a new trial. Beiersdoerfer appealed from that aspect of the order granting the new trial; the HRH corporations cross-appealed from that aspect of the order denying their motion for a JML, a judgment that, if granted, would have ended the case. We do not fault the HRH corporations for not arguing in their cross-appeal that they were entitled to a remittitur in a setting where they had already been granted a new trial.
Although we find no authority from this Court concerning the precise issue presented here — whether a party who does not argue on appeal all grounds presented in support of a Rule 59, Ala. R. Civ. P., postjudgment motion that was granted on one ground waives those alternative grounds if they are not asserted on appeal — we find support in federal decisions for our conclusion that the alternative grounds are not waived.[3] *Page 1057 
In Conway v. Chemical Leaman Tank Lines, Inc.,644 F.2d 1059, 1060-62 (5th Cir. 1981), the United States Court of Appeals for the Fifth Circuit held that a party that obtained a ruling in the trial court on one ground asserted in a post-judgment motion pursuant to Rule 59, Fed.R.Civ.P., and the only ground argued on appeal, had not waived its right to have the trial court address the alternative ground asserted in its postjudgment motion when the case was remanded.
 "Upon receipt of the mandate from the appeal court, a judgment was entered for the defendant upon the verdict for the jury in the second trial. The plaintiffs then reurged the second ground of their motion for a new trial as to the jury verdict of January, 1977. . . .
 ". . . .
 "The `law of the case' doctrine, a restriction self-imposed by the courts on themselves in the interests of judicial efficiency, generally operates to preclude a reexamination of issues decided on appeal, either by the district court on remand or by the appellate court itself upon a subsequent appeal. `As a general rule if the issues were decided, either expressly or by necessary implication, those determinations of law will be binding on remand and on a subsequent appeal' . . .
 "On the other hand, unlike common law res judicata, the law of the case established by a prior appeal does not extend to preclude consideration of issues not presented or decided on the prior appeal. The law of the case doctrine `does not include all questions which were present in a case and which might have been decided but were not.' . . .
 ". . . .
 "The Plaintiffs have not had their day in court as to this second ground, upon which the present order for a new trial is based. The law of the case doctrine did not operate to prevent the district court from considering it, a meritorious issue never previously passed upon by it and never submitted to or decided by the appellate court on the previous appeal."
644 F.2d at 1061-62 (citations and footnotes omitted).Conway did not involve a ruling on a postjudgment motion for a JML pursuant to Rule 50, but because it involved alternative rulings on a motion pursuant to Rule 59, we consider it applicable to the facts presented by this case. InArenson v. Southern University Law Center, 43 F.3d 194
(5th Cir. 1995), the Fifth Circuit distinguished Conway
and held that a party whose motion for a JML isgranted must raise its alternative Rule 59 motion for a new trial both in the trial court and on appeal.
 "Conway is distinguishable. In Conway, the court specifically noted that the district court failed to rule on the alternative ground `[t]hrough no fault of the [movants].' 644 F.2d at 1062. Rule 50(c)(1) commands, as noted, that a new trial motion shall be ruled upon at the same time as the [renewed] motion for [a judgment as a matter of law]. The Rule had been complied with in Conway, even though the court did not reach all grounds asserted by the party who sought a new trial. Here, by contrast, the Rule, whose purpose is to benefit the party attacking a verdict, was not complied with. Further, in Conway, the question addressed by this court was whether the plaintiffs, having won their new trial, waived the alternative ground for seeking new trial by failing to cross-appeal. This is a question of federal *Page 1058 
appellate practice, resolved by the general rule that a party need not raise in this court on cross-appeal alternative grounds to support a favorable judgment. But in this case, the principal error was committed in the trial court by its failure to comply with the clear command of Rule 50(c)(1), and by the defendants' omitting to so inform the court. Consequently, the question here is which party bears the burden of assuring compliance with the rule in the trial court. We hold . . . that it is the party whose motion invoked Rule 50(c) in the trial court."
43 F.3d at 197. We conclude that the HRH corporations were not obliged to raise in their cross-appeal in BeiersdoerferI the issues in their alternative motion for a remittitur that were mooted by the trial court's order granting their motion for a new trial.
 III. Conclusion
The trial court had jurisdiction to consider the HRH corporations' motion for a remittitur upon our remand of the case in Beiersdoerfer I. The motion for a remittitur was not denied in 2002 by operation of law pursuant to Rule 59.1, and the HRH corporations did not waive their right to argue the issues addressed in the motion for a remittitur even though they did not raise those issues in their cross-appeal inBeiersdoerfer I. We therefore reverse the order denying the motion for a remittitur and remand the case to the trial court for it to consider both grounds asserted in the motion for a remittitur: whether the damages awarded for mental anguish were excessive, and whether the HRH corporations are due a setoff for a percentage of the commissions earned by Beiersdoerfer pursuant to the contract the jury found to be in existence and enforceable.
The HRH corporations urge us to address the issues relative to remittitur ourselves, rather than to remand the case to the trial court for its consideration. Beiersdoerfer maintains that if we conclude that the trial court had jurisdiction to rule on the remittitur motion, then the trial court should have the opportunity to rule on the merits of the issues before they are considered by an appellate court. The HRH corporations rely onGray Brown-Service Mortuary, Inc. v. Lloyd,729 So.2d 280, 287 (Ala. 1999), in which Justice See, concurring in the result, stated: "[Although I would generally remand a case to have the trial court remedy a failure to specifically allocate a general verdict into compensatory- and punitive-damages awards, the trial court's specific conclusions in reviewing the question of excessiveness of the award, and the egregious facts of this particular case, obviate the necessity for remand." The facts in Gray Brown-Service Mortuary, in which a funeral home flagrantly mishandled a burial and subsequent interment, were such that Justice See concluded that they supported a compensatory-damages award equal to the amount of the jury verdict, regardless of whether the jury had awarded any punitive damages. The facts in this case are not so apparent as to justify our addressing the remittitur issues before the trial court has had an opportunity to do so. In fact-intensive issues such as those presented in this proceeding, the trial court is best suited to make an initial detailed examination, which it has not yet done.
REVERSED AND REMANDED.
COBB, C.J., and SEE, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
[1] Beiersdoerfer also argues that because the trial court did not have jurisdiction to rule on the HRH corporations' remittitur motion, the order denying that motion was not an appealable order. Because we hold that the trial court had jurisdiction to rule on the remittitur motion, the trial court's order was appealable.
[2] Although this Court's opinion in Beiersdoerfer I
stated that the trial court denied the HRH corporations' postjudgment motion for a JML, upon further review of the orders of the trial court entered in 2002, we do not find any order explicitly denying a motion for a JML after the jury returned its verdict. Nevertheless, we conclude that the trial court implicitly denied the postverdict motion for a JML when it granted the HRH corporations' motion for a new trial. The order granting a new trial is inconsistent with the view that the motion for a JML was meritorious. A different effect resulted concerning the motion for a remittitur, which was rendered moot by implication when the order granting a new trial was entered.
[3] Federal cases construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure, which were patterned after the Federal Rules of Civil Procedure. Borders v. Cityof Huntsville, 875 So.2d 1168, 1176 n. 2 (Ala. 2003). *Page 1059