SMITH, Justice.
 

 Loube Consulting International, Inc., Brenda J. Richardson, and Sandy Bush petition this Court for a writ of mandamus directing the Mobile Circuit Court (1) to vacate its order denying their motion for a protective order and (2) to enter an order granting their motion. We grant the petition and issue the writ.
 

 Facts and Procedural History
 

 Partridge, Smith, P.C. (“the plaintiff’), alleges that Loube Consulting International, Inc.; Richardson, the president of Loube Consulting; and Bush, the office manager for Loube Consulting (collectively, “the defendants”), sent four unsolicited facsimile advertisements to the plaintiffs office in Mobile County on June 4, 2008. Loube Consulting is an Ohio corporation that describes itself as “in the business of assisting attorneys to find medical experts to review medical records, to consult with attorneys on medical-legal issues, and, in some instances, provide medical experts to testify in legal cases.” The plaintiff describes itself as “an Alabama professional corporation.”
 

 The plaintiff filed a class-action complaint on October 10, 2008, against the defendants, alleging that the plaintiff was representative of a class of hundreds of persons and entities who were sent, on or after June 4, 2005, unsolicited facsimile advertisements by or on behalf of the defendants in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C.
 
 *743
 
 § 227 (2000) (“the TCPA”). The complaint alleges that the defendants willfully, knowingly, and negligently violated the TCPA by sending unsolicited facsimile advertisements.
 

 The TCPA provides that “[i]t shall be unlawful for any person within the United States ... to use any telephone facsimile machine ... to send, to a telephone facsimile machine, an unsolicited advertisement. ...” 47 U.S.C. § 227(b)(1)(C). The TCPA defines the term “unsolicited advertisement” as “any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person’s prior express invitation or permission, in writing or otherwise.” 47 U.S.C. § 227(a)(5). Recipients of facsimiles in violation of the TCPA may pursue a private right of action. 47 U.S.C. § 227(b)(3). Through such an action, a recipient may obtain injunctive relief and recover for each violation actual monetary losses or $500, whichever is greater. 47 U.S.C. § 227(b)(3). In addition, if the court finds that the defendant willfully or knowingly violated the TCPA, the court may award treble damages, 47 U.S.C. § 227(b)(3). The TCPA does include several exemptions to the general prohibition on sending unsolicited advertisements, including situations in which “the unsolicited advertisement is from a sender with an established business relationship with the recipient” and “the sender obtained the number of the telephone facsimile machine through ... the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement.” 47 U.S.C. § 227(b)(l)(e)(i) and (ii).
 

 Contemporaneously with the filing of the complaint, the plaintiff served the defendants with interrogatories and requests for production. Relevant to this petition, those discovery requests sought, among other things, the following information: (1) the total number of facsimile advertisements the defendants sent from June 4, 2005, to October 10, 2008; (2) each facsimile number to which such an advertisement was sent from June 4, 2005, to October 10, 2008; (3) the identity of the entity or individual to which each facsimile number belongs; (4) the number of times the defendants sent an advertisement to each facsimile number from June 4, 2005, to October 10, 2008; (5) whether the defendants had an established business relationship with each entity or individual to which a facsimile advertisement was sent; (6) whether the defendants obtained the express permission of the recipient to send each facsimile advertisement; and (7) a detailed description of “the entire process surrounding your fax advertising practices.” Those items are included in the following discovery requests:
 

 “INTERROGATORY NO. 10:
 
 Please state the total number (or as close an approximation as is reasonably possible) of facsimile transmissions advertising the commercial availability or quality of any property, goods, or services you have transmitted, caused to be transmitted and/or hired a third party to transmit, during the period beginning June 4, 2005, up through and including the present.
 

 “INTERROGATORY NO. 11:
 
 Please list each and every fax number to which a facsimile transmission as described in INTERROGATORY NO. 10 was transmitted, including in separate parentheses beside each fax number:
 

 “a. the number of times that each fax number was sent a fax transmission,
 

 “b. the name of the person or entity to whom the fax number belongs,
 

 
 *744
 
 “c. place an ‘X’ by each fax number belonging to a person or entity with which you contend you had an ESTABLISHED BUSINESS RELATIONSHIP (please see definition) at the time of the facsimile transmission(s),
 

 “d. place a ‘Y’ by each fax number belonging to a person or an entity from which you contend you obtained express permission or invitation to send the fax(es) prior to sending such fax(es).
 

 [[Image here]]
 

 “INTERROGATORY NO. 15:
 
 Please DESCRIBE fully and in detail the entire process surrounding your fax advertising practices, beginning from the time you first contemplated using fax advertising up through and including the present, including in your answer the IDENTITY of any persons, firms, or corporations involved in any aspect of the process, the IDENTITY of any documents or records maintained in the process, and a description of any computer programs or software used in the process.”
 

 “REQUEST NO. Jy
 
 Provide a list of each and every fax number to which you have transmitted, or caused to be transmitted, a fax offering the commercial availability or quality of any property, goods, or services as defined by the Federal Communications Commission.
 

 “REQUEST NO. 5:
 
 Provide a list of the names of the owners of each and every fax number to which you have transmitted, or have caused to be transmitted, a fax advertising the commercial availability or quality of any property, goods, or services.
 

 [[Image here]]
 

 “REQUEST NO. 9:
 
 For each fax recipient with whom you claim an established business relationship, or prior express invitation or permission, provide copies of any documents supporting your contention that an EBR [Established Business Relationship] or prior express invitation or permission exists and provide a list IDENTIFYing (please see definitions) the recipient, and their fax number.”
 

 The defendants failed to respond to the interrogatories and requests for production, and, on February 12, 2009, the plaintiff filed a motion to compel the defendants to answer these discovery requests. The trial court granted the motion, and the defendants responded to the discovery requests. In response to interrogatory no. 10, the defendants asserted:
 

 “We are unable to determine the number of facsimile transmissions advertising the commercial availability or quality of any property, goods, or services. We use the facsimile not only to advise potential customers of our business, but also to send HIPPA authorizations, personal records/information, medical records, court documents, agreements to employ Loube Consulting International, Inc., correspondence regarding cases under review, expert opinions, consultation reports, consultation summaries, and invoices among other documents. We do not contract with third parties for marketing.”
 

 In response to interrogatory no. 11 the defendants asserted:
 

 “See number 10. We cannot provide the information requested. Any attempt to reproduce the information sought here would be virtually impossible and thus unduly burdensome. We further object to providing any information which could compromise the identity of our clients and prospective clients or the
 
 *745
 
 individuals they represent. The information asked here could invade the HIPPA privacy laws. We do not have permission from any client to publish any information regarding our contacts with them. Additionally, the names of prospective clients are generated through the research of our staff and reflect years of effort in this ongoing business. Disclosure of that information could provide an unfair advantage to our competitors and cause substantial financial harm to our business.”
 

 In response to interrogatory no. 15, the defendants responded:
 

 “Prospective clients are identified and contacted in the manner described in the answer to Interrogatory No. 4.
 
 [1]
 
 If the prospective client agrees to receive information by facsimile, we may send one or two more facsimiles within a three year period. If, at any time, the prospective client tells us (by email, facsimile, or telephone to our toll free number) that they no longer wish to receive information about our consulting group, we do not send further facsimiles to that attorney. After three years or less, we again contact the prospective client by telephone to determine whether or not they still wish to receive facsimiles from our consulting group.
 

 “Additionally, there are no mass mailings or mass facsimiles. All of our marketing facsimiles are individually prepared by a member of our staff and addressed to specific individuals at the facsimile number provided by that prospective client. We create our own list of potential clients, and we do not use lists prepared by outside firms. We do not use any type of automated dialing equipment. We send faxes using a single phone line fax machine, and each number is entered by hand. We clearly identify our toll free number and email contact information on each facsimile page. We maintain a list of all prospective clients who ask us not to contact them again.
 

 “Finally, with specific reference to the Plaintiff in this matter, a call was placed by David Hiscott, a staff member of Loube Consulting International, Inc., to Plaintiffs office at 11:26 AM EST on September 26, 2006. A representative of [the plaintiff] gave Mr. Hiscott permission to send facsimiles containing information about Defendant’s consulting group. Mr. Hiscott sent information by facsimile, addressed to individuals at [plaintiffs office] on the same date at 12:02 PM EST. A second set of facsimiles, addressed to specific members of the firm, was sent in September of 2008. At no time, before or after these facsimiles were sent, did Plaintiff attempt to contact Defendants to advise them that Plaintiff had changed its preference
 
 *746
 
 about receiving information by facsimile transmission.”
 
 [2]
 

 In response to request for production no. 4, the defendants wrote: “See interrogatory # 10 and 11 and objections.” In response to request for production no. 5, the defendants wrote: “See response to Request for Production No. 4, above.” Lastly, in response to request for production no. 9, the defendants wrote:
 

 “Objection. This request is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, see Interrogatories No. 10 and 11 and objections. See also attached records reflecting the call to [the plaintiffs office] at 11:26 AM EST on September 26, 2006, and the record reflecting facsimile sent to [the plaintiffs office] on the same date at 12:02 PM EST.”
 

 The defendants then moved for a protective order preventing them from providing further responses to interrogatories no. 10, no. 11, and no. 15 and requests for production no. 4, no. 5, and no. 9. In that motion, the defendants asserted that they use only one facsimile machine for a variety of purposes and that “[n]o logs or records were kept delineating whether Loube Consulting International was sending a flyer, medical records, curriculum vitaes, statements, fee schedules or other information.” The defendants further asserted that to fully respond to the discovery requests
 

 “would require Loube Consulting International to reverse cross-reference every facsimile number to determine who the recipient was. Loube Consulting International would then have to look up the telephone number of that facsimile recipient to determine whether it was a consultant or a law firm. Assuming it was a law firm, Loube Consulting would then have to determine if it had an established business relationship with that law firm to determine whether there was a previous telephone call to that facsimile number.”
 

 
 *747
 
 The defendants contended that conducting this process would “consume all of its time for months to years” and that, therefore, the discovery requests are unduly burdensome, expensive, oppressive, or annoying.
 

 The defendants supported their motion for a protective order with Richardson’s affidavit, in which she testified that Loube Consulting sends approximately 600 facsimiles a month and that the staff of Loube Consulting consists of only one full-time employee and one part-time employee. Richardson testified that prior to “late in 2008” Loube Consulting did not maintain “a database of information or a list delineating whether facsimile messages were sent to an attorney regarding an active case, to a medical consultanVexpert, to attorneys we are sending messages regarding our services, or for another business purpose.” Richardson further testified:
 

 “In an attempt to determine what it would take for Loube Consulting International, Inc., to identify the recipient of those facsimiles, I randomly pulled facsimile numbers from the bills. I researched some of these numbers using the internet and our files of consulting attorneys and experts. It took an average of about 30 minutes for each number to determine whether the facsimile message was sent to a consulting attorney, to a medical consultant/expert, to an attorney with information about our services, or for another business purpose.”
 

 Richardson further stated that the staff of Loube Consulting spent approximately 16 hours to verify the telephone call and the facsimile sent to the plaintiff in September 2006.
 

 On June 12, 2009, the trial court denied the motion for a protective order without a written opinion. On July 7, 2009, the defendants filed this petition. No class has been certified in this case.
 

 Standard of Review
 

 “ ‘A writ of mandamus will be “issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.”
 
 Ex parte United Serv. Stations, Inc.,
 
 628 So.2d 501, 503 (Ala. 1993).’
 

 “Ex parte Horton Homes, Inc.,
 
 774 So.2d 536, 539 (Ala.2000). Regarding discovery matters specifically, this Court has stated:
 

 “ ‘Discovery matters are within the trial court’s sound discretion, and this Court will not reverse a trial court’s ruling on a discovery issue unless the trial court has clearly exceeded its discretion.
 
 Home Ins. Co. v. Rice,
 
 585 So.2d 859, 862 (Ala.1991)....’”
 

 Ex parte Guaranty Pest Control, Inc.,
 
 21 So.3d 1222, 1225-26 (Ala.2009).
 

 Discussion
 

 The defendants argue that this Court should issue a writ of mandamus directing the trial court to issue a protective order preventing the defendants from complying with the plaintiffs allegedly overly burdensome discovery requests in interrogatories no. 10, no. 11, and no. 15 and requests for production no. 4, no. 5, and no. 9. As noted above, mandamus is an extraordinary remedy, and “[t]he use of a writ of a mandamus to compel or to prohibit discovery is restricted because of the discretionary nature of a discovery order.”
 
 Ex parte Wal-Mart, Inc.,
 
 809 So.2d 818, 821 (Ala.2001). To prevail in this case the defendants must establish (1) a clear legal right to the protective order, (2) the trial court’s refusal to issue the protective order, (3) the lack of another adequate reme
 
 *748
 
 dy, and (4) the properly invoked jurisdiction of this Court.
 
 See Ex parte Alfab Inc.,
 
 586 So.2d 889, 891 (Ala.1991).
 

 First, we consider whether mandamus is the appropriate remedy in this case. In
 
 Ex parte Ocwen Federal Bank FSB,
 
 872 So.2d 810, 813 (Ala.2003), this Court stated that “mandamus will issue to reverse a trial court’s ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal.” Here, the defendants argue that they do not have an adequate remedy by ordinary appeal because, they say, “requiring [them] to conduct discovery in accordance with the plaintiffs discovery requests, will immediately cause [them] to undertake burdensome actions at excessive costs.” Petition, at p. 10. We agree that if the discovery permitted by the trial court is unduly burdensome and costly, the defendants will have no remedy by appeal after they have complied with the discovery requests. Accordingly, the trial court’s denial of the defendants’ motion for a protective order allegedly forms an appropriate basis for mandamus review under
 
 Ocwen. See also Ex parte Cooper Tire & Rubber Co.,
 
 987 So.2d 1090, 1101 (Ala.2007) (holding that the writ of mandamus was the appropriate remedy where a discovery request was unduly broad).
 

 We next consider whether the defendants have demonstrated a clear legal right to the protective order the trial court refused to issue. “The Alabama Rules of Civil Procedure allow broad and liberal discovery.”
 
 Ex parte St. Vincent’s Hosp.,
 
 991 So.2d 200, 208 (Ala.2008) (citing
 
 Ex parte O’Neal,
 
 713 So.2d 956, 959 (Ala.1998)). Rule 26(a), Ala. R. Civ. P., authorizes a party to obtain discovery in several ways, including “written interrogatories” and requests for “production of documents.” Rule 26(b)(1) permits discovery “regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... ” Although the relevant information sought might not be admissible at trial, it is discoverable under Rule 26(b)(1) so long as it “appears reasonably calculated to lead to the discovery of admissible evidence.”
 

 Even so, the Alabama Rules of Civil Procedure recognize that the right of discovery is not absolute, and, under certain circumstances, the trial court is required to limit a party’s use of the discovery methods permitted under Rule 26(a). In particular, this Court has noted that Rule 26(c), which permits the trial court to issue protective orders, “recognizes that the right to discovery is not unlimited, and the trial court has broad powers to control the use of the process to prevent its abuse by any party.”
 
 Ex parte Compass Bank,
 
 686 So.2d 1135, 1137 (Ala.1996). This Court has advised that “ ‘to be entitled to a protective order, a movant must either show good cause why the objected-to deposition or production of documents would be unduly burdensome or expensive, oppressive, embarrassing or annoying, or that the subject matter sought to be discovered is privileged....’”
 
 Ex parte Scott,
 
 414 So.2d 939, 941 (Ala.1982) (quoting
 
 Assured Investors Life Ins. Co. v. National Union Assocs., Inc.,
 
 362 So.2d 228, 231 (Ala.1978), overruled on other grounds,
 
 Ex parte Norfolk Southern Ry.,
 
 897 So.2d 290 (Ala.2004)).
 

 In this petition, the defendants argue that the trial court exceeded its discretion in denying their motion for a protective order because, they say, the discovery requests are unduly burdensome and expensive. The defendants contend that, in the trial court, they established that the
 
 *749
 
 discovery requests cover “thousands of faxes, and it could take thousands of hours to determine whether each individual facsimile message was for marketing purposes.” Petition, at p. 11. The defendants also argue that the discovery requests are unduly expensive, asserting:
 

 “The plaintiff has asked for four (4) years of information — forty-eight months. There are 600 faxes a month. 600 faxes X 48 months X .5 hour is 14,400 hours (300 hours a month or 75 hours a week) required just to provide the information on marketing faxes. Even if it were simple clerical work at $15 an hour, the cost will be in excess of $216,000. If it is paralegal work at $50+ an hour, then the costs are in excess of $720,000. One full-time employee and one sixteen hour a week high school student employee cannot do it and keep the business open.”
 

 Petition, at p. 11.
 

 The defendants correctly argue that in numerous cases this Court has held that the trial court exceeded its discretion in ordering unduly burdensome discovery.
 
 See, e.g., Ex parte Cooper Tire & Rubber Co.,
 
 987 So.2d at 1104-06;
 
 Ex parte Dillard Dep’t Stores, Inc.,
 
 879 So.2d 1134 (Ala.2003);
 
 Ex parte Wal-Mart, Inc.,
 
 809 So.2d at 822-23; and
 
 Ex parte American Carpet Sales, Inc.,
 
 703 So.2d 950 (Ala.1997). In
 
 Ex parte Dillard Department Stores,
 
 an action seeking damages for alleged false imprisonment, the plaintiff sought documents regarding all actions filed against Dillard, all claims against Dillard that did not result in an action being filed, and all customer complaints regarding mistreatment by Dillard employees. 879 So.2d at 1137. This Court held that the document requests were overly burdensome, and it reversed the trial court’s order compelling production of the documents. 879 So.2d at 1138. In reaching that decision the Court, in part, relied upon
 
 Ex parte Compass Bank,
 
 supra, in which it held that discovery requiring production of 21,246 files and review of 35,000 customer transactions unrelated to the plaintiffs claim was unduly broad, burdensome, and expensive. Similarly, in
 
 Ex parte American Carpet Sales,
 
 supra, the plaintiff in a fraud action sought discovery of all the defendant’s invoices for sales it made to Alabama residents over a five-year period. 703 So.2d at 951. The defendant objected, asserting that production of those invoices would require it to manually review at least 30,000 customer files and would require approximately 1,500 man-hours, or 37.5 weeks, for one of its employees. 703 So.2d at 953. Despite the liberal discovery afforded in fraud cases, this Court held that the discovery request was overly burdensome and issued a writ directing the trial court to limit the discovery request to a two-year period.
 
 Id.
 

 Here, the plaintiff does not contend that the information sought in the challenged discovery requests is related to the merits of its own claims against the defendants. Rather, the plaintiff asserts that “[t]he information requested in the discovery requests filed and served by [the plaintiff] is critical to identifying the class in this putative action.” Answer to petition, at p. 1.
 
 See also
 
 p. 13 (“[t]he hardship involved in identifying advertising faxes is relatively small when compared to the importance of identifying the class”). We note that in
 
 Oppenheimer Fund, Inc. v. Sanders,
 
 437 U.S. 340, 354 n. 20, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), the United States Supreme Court noted that “[tjhere is a distinction in principle between requests for identification of class members that are made to enable a party to send notice and requests that are made for true discovery purposes,” and it held that a party’s request for information solely for the purpose of identifying class members is not
 
 *750
 
 within the scope of Rule 26, Fed.R.Civ.P., because such information is irrelevant to the subject matter involved in the pending action.
 
 [3]
 
 437 U.S. at 351-54, 98 S.Ct. 2380. The Supreme Court held that a trial court’s authority to order class-action defendants to assist in identifying members of the plaintiff class is found within Rule 23, Fed.R.Civ.P., holding that “Rule 23(d) ... authorizes a district court in appropriate circumstances to require a defendant’s cooperation in identifying the class members to whom notice must be sent.” 437 U.S. at 355, 98 S.Ct. 2380.
 

 In this case, we see no indication in the materials before us that the plaintiff sought information pursuant to Rule 23, Ala. R. Civ. P., or that the trial court granted the motion to compel pursuant to Rule 23. Rather, the plaintiffs interrogatories and requests for production request answers “in accordance with Rules 33 and 34 of the Alabama Rules of Civil Procedure,” and those rules provide that a party may request information within the scope of Rule 26. Because Rule 26 provides for the discovery of information that is “relevant to the subject matter involved in the pending action,” the plaintiffs requests, in the interrogatories and requests for production, for information by which to identify class members was ill-founded. Nevertheless, assuming that the discovery requests at issue would provide some information that is relevant to the alleged unsolicited advertising practices of the defendants — the subject matter involved in this case — we conclude that the plaintiffs discovery requests are overly broad and that the burden and expense imposed on the defendants to produce the information far outweighs any benefit the plaintiff would receive. Importantly, the interrogatories and requests for production do not seek the telephone records of Loube Consulting.'
 
 [4]
 
 Instead, the plaintiff has requested that the defendants create detailed lists of the facsimile numbers to which the defendants have sent advertisements, and the defendants have produced evidence indicating that production of those lists would require them to manually review each facsimile number to which they have sent facsimiles for more than three years.
 

 Conclusion
 

 The defendants have demonstrated a clear legal right to a protective order prohibiting further responses to interrogatories no. 10, no. 11, and no. 15 and to requests for production no. 4, no. 5, and no. 9 as propounded. Therefore, we grant the petition and issue a writ directing the trial court to enter such an order.
 

 
 *751
 
 PETITION GRANTED; WRIT ISSUED.
 

 COBB, C.J., and WOODALL, PARKER, and SHAW, JJ., concur.
 

 [1]
 

 1. The defendants’ response to interrogatory no. 4 states
 

 "We perform our own research to determine the names of attorneys who we believe would benefit from the availability of our consulting services. We contact those individual attorneys and law firms by telephone to determine if they would like to receive information describing our consulting practice. We offer to send a two page facsimile containing the information, or, if the prospective client would prefer, we offer to send the information by electronic mail or regular mail. If the prospective client agrees to receive information by facsimile, we verify that the facsimile number is correct and ask the prospective client to provide us with another facsimile number if they have a different preference. If the prospective client indicates that they prefer not to receive any information from us, we do not send anything by facsimile, electronic mail, or regular mail.”
 

 [2]
 

 . The plaintiff notes that the defendants’ response to interrogatory no. 15 is inconsistent with the affidavit of Sandy Bush, the office manager for Loube Consulting, which the defendants produced in support of a motion to dismiss filed and withdrawn before the response to the discovery requests at issue here. In the affidavit Bush testified:
 

 "One of my duties is to identify prospective attorneys who represent parties in medical malpractice and personal injury cases and to send those attorneys a flyer regarding the services offered by Loube Consulting International, Inc. To identify these prospective attorneys, I do a search of public records. The primary source of this information is the Internet.
 

 "Attorneys and law firms, like [the plaintiff], utilize web pages to advise the public of their areas of practice. When I find an attorney or law firm that practices in the fields of medical malpractice or personal injury, I search our database to determine whether that attorney or law firm has previously been contacted by Loube Consulting International, Inc., and has requested that we not send unsolicited advertisements from Loube Consulting International, Inc. to that attorney or law firm.
 

 "Around June 4, 2008, I found the names of several individual attorneys on the
 
 Super-pages.com
 
 website. Some of those attorneys had an Internet link next to their names which connected to [the plaintiff’s website]. This webpage published their facsimile telephone number as 251-338-0571 and indicated that [the plaintiff] practiced in several areas of law, including 'Medical and Professional Malpractice’ as well as Healthcare Law. I checked our database list and determined that there had been no previous request by [the plaintiff] to Loube Consulting International, Inc., not to send them or their attorneys unsolicited advertisements.
 

 “I sent, via facsimile to the facsimile telephone number published both next to each individual attorney’s listing and on [the plaintiff’s] web page, a letter describing our services and a Professional Consulting Certificate. Each facsimile was individually addressed to a specific attorney ... who had been listed as practicing in the area of medical malpractice.”
 

 [3]
 

 . When
 
 Opperiheimer Fund
 
 was decided, Rule 26(b)(1), Fed.R.Civ.P., was identical to the current Rule 26(b)(1), Ala. R. Civ. P., stating: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim....” " 'Federal cases construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure, which were patterned after the Federal Rules of Civil Procedure.' ”
 
 Ex parte Safeway Ins. Co. of Alabama,
 
 990 So.2d 344, 349 n. 2 (Ala.2008) (quoting
 
 Hilb, Rogal & Hamilton Co. v. Beiersdoerfer,
 
 989 So.2d 1045, 1056 n. 3 (Ala.2007)).
 

 [4]
 

 . The plaintiff contends that its counsel has "repeatedly offered to 'work through’ discovery issues and start with production of the items (itemized phone bills) that are readily available to Loube with virtually zero burden on Loube.” Answer to petition, at p. 1 (referencing Exhibit 5 to the plaintiff's answer to the petition). The plaintiff supports this contention with a letter its counsel sent to the defendants’ counsel nearly two months after the trial court denied the motion for a protective order. Because this letter was not before the trial court, however, it is not before this Court; therefore, we have no discovery requests before us that seek the itemized telephone records of Loube Consulting.